JjFOIL, Judge.
In this suit on a promissory note, plaintiff, Richard S. Blossman as agent of the Bloss-man Group, challenges a summary judgment entered against him and in favor of defendant, Johnny Smith, holding the note to be void ab initio. We reverse.
FACTS
Prior to 1984, the Blossman Group owned a controlling interest in First National Corporation (FNC), a bank holding company whose principal asset was First National Bank of St. Tammany Parish. In 1983, Ronald Case, who represented a group of Jefferson Parish bankers, approached the Blossmans about the possibility of that group acquiring majority ownership of FNC. After lengthy negotiations, the Blossmans ultimately agreed to sell their shares under certain terms and conditions. Accordingly, on September 29, 1983, Ronald Case and another man, Joseph Broeato, incorporated the St. Tammany Corporation (STC), the sole purpose of which was to serve as a commercial vehicle for the acquisition of FNC. On that same date, FNC and STC executed a Reorganization and Merger Agreement [1] In accordance with this agreement, a series of events took place with the specific purpose of effectuating the acquisition of a controlling interest in FNC by STC.
After executing the merger agreement, Case and Broeato proceeded to assemble a group of investors to purchase stock in STC. One of those investors was Johnny Smith, who was a member of the Board of Directors of First National Bank. According to Smith, Dick Blossman, a friend of his, asked that he meet with Case and Broeato about stock they were selling in a new bank. Smith met with them twice and discussed purchasing stock in a new bank corporation, STC. At one of the meetings, Case and Broeato advised Smith that, if he executed a note for the shares of stock in STC, the growth dividends would be sufficient to retire the note within several years. Smith agreed, and on February 4, 1984, he signed an STC Subscription Agreement. Then, onJjMarch 19, 1984, he was issued STC Stock Certificate Number 271, representing 9,901 shares of stock in STC.
On July 3,1984, all of the remaining transactions relative to the merger and acquisition were consummated. Smith executed a promissory note bearing that date payable to STC in the principal amount of $244,800.00, for 9,901 shares of original issue stock in STC. Smith also executed a stock pledge agreement pledging the 9,901 shares of STC stock represented by Certificate Number 271 as security for repayment of the note. STC merged with FNC and the existence of STC and FNC continued in FNC. In accordance with the merger agreement, all shares of STC stock were converted to FNC stock. As such, FNC issued Certificate Number B2664, representing 10,000 shares of FNC stock, to the STC Voting Trust[2] for the account of Smith.
On the effective date of the merger, the Blossman Group stock in FNC was canceled, leaving the former STC stockholders as the majority stockholders in FNC. In exchange for the cancellation of the Blossman stock, STC transferred all of its assets to the Bloss-man Group, which included cash and promissory notes given as payment by the STC shareholders. The promissory note executed by Smith was among those notes that were transferred to the Blossman Group. The *1053 notes and pledge agreements were held in a trust (the Blossman Group Trust) for the benefit of the group.
Smith paid interest on his note for four years, but subsequently defaulted on the note when FNC failed in 1988. FNC’s assets were acquired by Hibernia Bank on November 18, 1988. Hibernia filed this suit on the promissory note against Smith as Trustee of the Blossman Group Trust, but the trust later terminated and Richard S. Blossman, as agent of the Blossman Group, was substituted as proper party plaintiff.
USmith filed an answer, alleging that the note is null and void as it was executed in exchange for stock in STC in violation of La.R.S. 12:52 C. Smith later filed a motion for summary judgment urging that the sale of stock for a promissory note is void ab initio as being against public policy and express provisions of the law. After a hearing on the motion, the trial court ruled in Smith’s favor, holding the note to be void ab initio. Blossman later filed a motion for a new trial based on the assertion that the judgment was contrary to the law and evidence. The trial court denied the motion and this appeal by Blossman followed.
APPLICABILITY OF LA.R.S. 12:52 B
La.R.S. 12:52 deals with the consideration to be given for the issuance of shares in a corporation. In pertinent part, it provides as follows:
B. Shares issued (1) in payment of a stock dividend, (2) pursuant to exercise of conversion rights, (3) in exchange for or in respect of, outstanding shares pursuant to a reclassification of stock, or (4) in a merger or consolidation as provided in the merger or consolidation agreement, shall be considered as fully paid when so issued.
C. The consideration for shares issued otherwise than as stated in subsection B of this section, shall be paid in cash or in corporeal or incorporeal property, or services actually rendered to the corporation, the fair value of which is not less than the dollar amount of the consideration fixed for the shares, before the shares are issued. Upon payment of the consideration fixed therefor, such shares shall be considered as fully paid. Cash consideration for shares may not be paid by the purchaser’s note, secured or unsecured, or uncertified check; and in case of delivery of such a note or check in payment for shares, the shares shall not be issued until the note or check has been paid in full.
First, Blossman argues the trial court erred in failing to find subsection B applicable to the transaction in this ease. He asserts that Smith was initially issued shares of stock in STC pursuant to the Reorganization and Merger Agreement. These STC shares were then exchanged for shares of FNC in accordance with that agreement. The FNC shares were then placed in the STC Voting Trust for the account of Smith pursuant to his agreement with Case and Brocato. Blossman claims the note given by Smith was simply the commercial instrument which he used to participate in the merger and consolidation of STC and FNC. Blossman asserts that, viewing the transaction as a whole, the net result was that the Blossman Group simply sold their FNC stock to Smith Rfor his note. He argues this transaction was clearly one that was contemplated by subsection B. We disagree.
While we believe that this case involves a merger between STC and FNC, numerous transactions and events took place both before and simultaneously with the merger. The sole transaction that we are concerned with is the purchase of STC stock by Smith in exchange for his promissory note. On February 4, 1984, Smith signed an STC Subscription Agreement. On March 19, 1984, he was issued STC Stock Certificate Number 271, representing 9,901 shares of stock in STC, obviously before any consideration was paid to the corporation since Smith did not sign the promissory note until July 3, 1984. Clearly, this situation involves the giving of a note by Smith for original issue stock in STC, in violation of subsection C. We find that subsection B’s exception to the general rule of subsection C that stock received in a merger or consolidation shall be considered as fully paid when issued is inapplicable to this ease.
*1054 NULLITY OF THE TRANSACTION
Blossman further argues the trial court erred in finding that the transaction was void ab initio. He asserts that the purchase of stock on credit is not a transaction which is an absolute nullity and is entirely enforceable as between the parties. In the alternative, Blossman suggests that the issuance of stock in violation of subsection C of La.R.S. 12:52 is merely a relative nullity. As such, the maker of the note is not a person for whose interest the ground for nullity was established. We agree with plaintiffs latter assertion.
La.Civ.Code art. 2030, concerning the absolute nullity of contracts, provides as follows:
A contract is absolutely null when it violates a rule of public order, as when the object of a contract is illicit or immoral. A contract that is absolutely null may not be confirmed.
Absolute nullity may be invoked by any person or may be declared by the court on its own initiative.
La.Civ.Code art. 2031, concerning the relative nullity of contracts, states:
A contract is relatively null when it violates a rule intended for the protection of private parties, as when a party lacked capacity or |6did not give free consent at the time the contract was made. A contract that is only relatively null may be confirmed.
Relative nullity may be invoked only by those persons for whose interest the ground for nullity was established, and may not be declared by the court on its own initiative.
La.R.S. 12:52 C does not provide that the purchase of stock on credit renders the transaction an absolute nullity. Yet the trial court found the note to be absolutely null because it violated public order as set forth by the legislature. Under La.Civ.Code art. 2030, if the note is absolutely null, it may not be confirmed. However, in the statute itself, the legislature has provided a method of confirming a situation in which a note is given in payment for shares. Subsection C states that in such a case, “the shares shall not be issued until the note ... has been paid in full.” Rather than providing that the giving of a note as consideration for stock voids the transaction, the legislature has provided that the note must be paid in full before the shares are issued. For this reason, we find that a transaction in which a note is given for shares of stock constitutes merely a relative nullity. As such, under La.Civ.Code art. 2031, it may be invoked only by those persons for whose interest the ground for nullity was established.
The aim of statutes such as La.R.S. 12:52, which define the types of consideration which may be paid for the issuance of shares of a corporation, is to protect the corporate creditors and the other shareholders by preventing the watering of corporate stock. Their purpose, is to prevent corporations from issuing stock without receiving full value and thereby diluting the holdings of innocent stockholders and causing reliance by creditors on false or nonexistent capital resulting from the issuance of watered stock. Haselbush v. Alsco of Colorado, Inc., 161 Colo. 138, 421 P.2d 113, 114 (1966).
In this case, the person seeking to invoke the defense is not one of those persons for whose interest the ground for nullity was established. Smith was neither an existing shareholder or a creditor of the company. Rather, Smith is an educated businessman. He undertook this business risk knowing full well the exact nature and purpose of the company he was investing in, STC, and the company which would remain after the merger, FNC. After all, he was on the 17Board of Directors of FNB, the primary asset of FNC. Unfortunately, Smith’s investment turned sour when FNC failed in 1988. Had Smith originally paid cash for his shares in STC, he would stand in the same place he stands today, as he would have lost his cash investment when the bank failed. Smith cannot now seek protection by urging the contract he knowingly entered into is a nullity. We hold that Smith has no standing to raise subsection C as a defense to plaintiffs suit on the note and guaranty agreement because he actively and knowingly participated in the transaction.
*1055 Appellate courts are to review summary judgments on a de novo basis under the same criteria governing the trial court’s consideration of whether a summary judgment is appropriate. Tugwell v. State Farm Ins. Co., 609 So.2d 195, 197 (La.1992). Summary judgment should be granted if, and only if, there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966. For the above reasons, Smith was not entitled to judgment as a matter of law. Accordingly, summary judgment was improper. We therefore reverse the judgment of the trial court and remand the matter for trial on the merits. Costs of this appeal are assessed to appellee, Johnny Smith.
REVERSED AND REMANDED.
GONZALES, J., concurs and assigns reasons.
FOGG, J., dissents and assigns reasons.

. This agreement was subsequently amended twice by the parties.

. As part of the acquisition scheme, the STC shareholders placed their shares of STC stock into a voting trust called the St. Tammany Corporation Trust. According to the STC Prospectus, subscribers were not required to become members of the Voting Trust, but were urged to do so by company management in order to consolidate voting control of FNC upon consummation of the merger. The trustees, who were Case and Broeato, had full power to vote the shares of FNC stock which were subject to the agreement. Subscribers who signed the Voting Trust Agreement were issued voting trust certificates in lieu of company stock indicating the number of shares of stock subject to the agreement.