769 So.2d 1200 (2000)
Mary B. TOUCHARD
v.
SLEMCO ELECTRIC FOUNDATION, et al.
No. 99-C-3577.
Supreme Court of Louisiana.
October 17, 2000.
*1201 Kenneth Wayne Jones, Jr., Terry L. Rowe, Lafayette, Counsel for Applicant.
John Henri Pucheu, Eunice, Counsel for Respondent.
Troy E. Bain, Shreveport, Counsel for Louisiana Trial Lawyer's Association, Amicus Curiae.

ON REHEARING
TRAYLOR, Justice.
In this personal injury suit, we are presented with the issue of whether the Court of Appeal, Third Circuit, properly applied the manifest error standard of review. After a review of the record and the applicable law, we find that the court of appeal misapplied the manifest error standard. Accordingly, for reasons set forth herein, we reverse the judgment of the court of appeal and reinstate the trial court's judgment.

FACTS AND PROCEDURAL HISTORY
On April 1, 1996, plaintiff, Mary Touchard drove her friend, Lucille Bellard, to Carencro, Louisiana, to pay her SLEMCO electric bill. As Ms. Touchard was exiting the SLEMCO parking lot, her car was hit from behind by a pickup truck driven by Ted Breaux.
Ms. Touchard and Ms. Bellard testified that the accident occurred when Ms. Touchard was stopped at a stop sign posted on a driveway exiting the SLEMCO parking lot onto the service road. They both testified that Ms. Touchard's car was pushed into the service road adjacent to the parking lot. When asked to describe the impact, Ms. Touchard responded that impact made a loud noise. Conversely, Mr. Breaux maintained that he heard little to no noise upon impact. Ms. Touchard declined to have an ambulance called and reported to Ms. Bellard that she had a headache.[1]
Mr. Breaux admitted that he struck Ms. Touchard from the rear. However, he did not believe that he was totally at fault. According to Mr. Breaux, Ms. Touchard started forward, "like she was taking off in a normal fashion." He looked to the left to make sure the road was clear of traffic and took his foot off of the brake; he did not put his foot on the accelerator. Mr. Breaux testified that when he turned his head forward again, Ms. Touchard was right in front of him. He described the impact as a slight touch. Mr. Breaux denied that he pushed Ms. Touchard's car into the service road, testifying that Ms. *1202 Touchard's vehicle was already on the road when he hit her.[2]
As a result of the accident, Ms. Touchard filed suit against Ted Breaux; State Farm Mutual Insurance Company, Mr. Breaux's liability insurer; and Southwest Louisiana Electric Membership Corporation (SLEMCO), Mr. Breaux's employer. SLEMCO was dismissed prior to trial, leaving only State Farm and Mr. Breaux as defendants. Ms. Touchard maintained that she sustained both physical and mental injuries as a result of this accident.
Ms. Touchard has a long history of physical and mental complaints dating back to her first automobile accident 1961. As a result of the 1961 accident, Ms. Touchard suffered a fractured cervical vertebra. Four years later, in 1965, Ms. Touchard was involved in a second accident in California in which she suffered a concussion, whiplash, chest wall contusions and a severe traumatic lumbosacral strain. The third accident occurred in 1972 wherein Ms. Touchard was diagnosed with a concussion, cervical and lumbar strain. It was in 1972 that Ms. Touchard had her first surgery. Throughout the 1970's Ms. Touchard continued to complain of sciatic, lumbar and cervical pain; and in 1979, she underwent a second surgery. In addition to the physical treatment, Ms. Touchard also acknowledged to being admitted to the State Mental Hospital at Pineville for drug and alcohol abuse in 1976.
Throughout the 1980's Ms. Touchard continued to suffer severe pain, much of which caused her to be irritable and moody. In 1987, Ms. Touchard was admitted to a clinic for drug and alcohol abuse as a result of the significant amount of pain medication taken. She also was involved in her fourth accident in September of that year.
In June 1993, Ms. Touchard was admitted to Cypress Hospital for psychological counseling as a result of her attempting to take her life. Upon release, she began seeing Dr. David Dawes, a psychiatrist. Dr. Dawes testified that Ms. Touchard suffered an anxiety disorder, as well as post traumatic anxiety, and a depression disorder that was a direct result of the pain which she had endured over the past fifteen years. After reviewing Ms. Touchard's extensive medical history, we have no doubt that she suffered from both physical and mental injuries prior to the April 1, 1996 accident. However, it is a determination for the factfinder to discern whether Ms. Touchard suffered an aggravation of her pre-existing conditions.
During trial, several witnesses testified regarding Ms. Touchard's prior medical history. Dr. Ronald Segar, a family practitioner, who Ms. Touchard began seeing after the 1996 accident, testified regarding her physical condition. While Dr. Dawes, her psychiatrist, testified regarding Ms. Touchard's prior mental history.
At the initial consultation on April 4, 1996, Ms. Touchard complained to Dr. Segar of pain on the left side of her head immediately after the accident.[3] She related that later she had neck pain, pain radiating down her trapezius muscles going into her shoulders, arm pain, soreness in the chest area, lower back pain, and a headache. Dr. Segar testified that the only visible evidence of trauma to Ms. Touchard was the cut on her left arm. Ms. Touchard made Dr. Segar aware of her prior medical treatment, and complained to Dr. Segar that these prior conditions were aggravated by the accident. Dr. Segar treated Ms. Touchard with *1203 physical therapy, muscle relaxers, and pain relievers. He was of the opinion that Ms. Touchard had reached maximum medical improvement as of November 22, 1996, and he discharged her from his care at that time.
In his opinion, her pre-existing conditions of lower back pain, TMJ, and headaches were aggravated by the accident. At the time that he discharged her, Dr. Segar testified that Ms. Touchard felt the pain in these areas was approximately at the level as before the accident. He testified that her complaints were consistent with the type of injury expected to result from a rear-end collision and that her complaints following the accident were more probably than not caused by the accident. However, all objective testing conducted established that Ms. Touchard's condition was nearly the same as before the accident.[4]
Dr. Dawes also testified on behalf of Ms. Touchard. He stated that he had been treating Ms. Touchard since 1993. He testified that Ms. Touchard had a mental condition which pre-existed the April 1, 1996 accident. In fact, as of December 19, 1995, Dr. Dawes was of the opinion that Ms. Touchard would need psychiatric care indefinitely. Specifically, Dr. Dawes testified that Ms. Touchard had suffered from post-traumatic stress as early as 1993. Ms. Touchard had seen Dr. Dawes on March 20, 1996, two weeks prior to the accident which forms the basis of this suit, for an office visit. Before the accident, she had office visits with Dr. Dawes once every three months. Her visits increased to one visit every two months after the accident. Dr. Dawes testified that Ms. Touchard complained that she had more nightmares, intrusive thoughts, and hyper-vigilance since the accident. He described her as being more distraught, more preoccupied, and more consistently tearful following the April 1, 1996 accident. Dr. Dawes was also questioned as to whether there were any objective findings which were used to reach the conclusion that Ms. Touchard's injuries were exacerbated. His response was that his conclusions were based solely on the history and information provided to him by Ms. Touchard.
At the conclusion of trial, the trial court entered judgment in favor of defendants, finding plaintiff suffered no injuries which were caused by Mr. Breaux.
The Court of Appeal, Third Circuit, reversed and, based on the medical and lay testimony provided by Ms. Touchard, concluded the trial court erred in finding "[t]his accident did not aggravate Ms. Touchard's pre-existing mental condition." Touchard v. Slemco Electric Foundation, 99-539 (La.App. 3 Cir. 11/17/99); 745 So.2d 1232, 1237. The court of appeal concluded that there was no indication that Ms. Touchard's pre-existing mental condition was not genuine; and further concluded that "special circumstances" existed discounting any doubt that her claim was spurious, based on our decision in Moresi v. State, Through Dep't of Wildlife and Fisheries, 567 So.2d 1081 (La.1980). Finally, the court of appeal assigned Mr. Breaux's fault at one hundred percent and awarded Ms. Touchard $10,000 in damages.
Judge Amy dissented, finding no manifest error in the trial court's determination. He also noted that he did not believe any award for mental damages was warranted as the facts of the case did not present the type of special circumstances described by this court in Moresi.
Defendants applied for certiorari. In a summary disposition, we vacated and set aside the ruling of the court of appeal for the reasons assigned by Judge Amy in his dissent. Toucard v. Slemco Electric Found., 99-3577 (La.2/18/00); 754 So.2d 953. Plaintiff sought rehearing, which was granted. Touchard v. Slemco Electric Found., 99-3577 (La.4/20/00); 759 So.2d *1204 769. On rehearing, we adhere to our original conclusion but for different reasons vacate and set aside the judgment of the court of appeal.

DISCUSSION
It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978). When there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Lirette v. State Farm Ins. Co., 563 So.2d 850, 852 (La.1990); Rosell v. ESCO, 549 So.2d 840, 844 (La.1989); Canter v. Koehring Co., 283 So.2d 716, 724 (La.1973). Therefore, the issue for the reviewing court is not whether the trier of fact was wrong, but whether the fact-finder's conclusions were reasonable under the evidence presented. Rosell, 549 So.2d at 844-45. When a factfinder's determination is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. Id. [Citations omitted.] Applying the "manifest error" standard of review to the instant case, we find the court of appeal erred in reversing the trial court. Specifically, we conclude that the court of appeal erred in substituting its evaluations and inferences for that of the trier of fact where the record adequately supported the trial court's finding that Ms. Touchard did not suffer any injuries, physical or mental, as a result of defendant's actions.
At the conclusion of trial, the trial judge found that "[t]here were no injuries to the plaintiff that were caused as a result of the defendant's fault." This conclusion is well supported by the record. Prior to the April 1, 1996 accident, Ms. Touchard had been involved in five automobile accidents and various other accidents. She had undergone extensive medical treatment as a result of injuries received in those accidents, including psychiatric counseling, three back surgeries, treatment for a temporomandibular joint (TMJ) injury, and treatment for chronic lower back pain.
It is well settled in our jurisprudence that a defendant takes his victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct. American Motorist Ins. Co. v. American Rent-All, 579 So.2d 429 (La.1991). Where defendant's negligent action aggravates a preexisting injury or condition, he must compensate the victim for the full extent of his aggravation. Perniciaro v. Brinch, 384 So.2d 392 (La. 1980). Thus, it was clearly in the trial court's purview as to whether Ms. Touchard established a casual link between the accident and aggravation of Ms. Touchard's alleged physical and mental injuries, if any.
The trial court heard testimony from Dr. Dawes, Ms. Touchard and several of Ms. Touchard's friends. The testimony was consistent that Ms. Touchard had emotional problems both before and after the accident. The problem the court faced was determining whether it would believe that Ms. Touchard's problems were exacerbated by the accident. According to Dr. Dawes, Ms. Touchard explained to him that she was often afraid when she heard car tires screeching or when she witnessed a car accident. She claimed to be filled with rage if another driver disregards a traffic signal or law. On cross examination, Dr. Dawes was questioned as to whether Ms. Touchard exhibited any objective signs of an exacerbation of her mental illness. Dr. Dawes testified that his findings were based on purely subjective information which was provided to him by Ms. Touchard. He denied speaking with any of Ms. Touchard's family members or any one else regarding how she coped with stress and depression both prior to or after the April 1, 1996 accident. Dr. Dawes also pointed to several outside *1205 factors which occurred after the accident which also could have contributed to Ms. Touchard's depression. For instance, Ms Touchard suffered the loss of a friend who died from cancer; she suffered the loss of another friend who died in a car accident; and Ms. Touchard was also grieving due to the death of her mother. Hence, there were several factors, not related to the accident, which occurred after the accident which could have easily contributed to Ms. Touchard's depression. Moreover, it was reasonable for the trial court to consider the testimony of Dr. Dawes wherein he concluded that Ms. Touchard had suffered from depression in the past and believed that she was therefore prone to suffering from depression again in the future, irrespective of the accident.
Several of Ms. Touchard's friends also testified regarding her mental condition. The witnesses testified that Ms. Touchard had changed since the accident of April 1, 1996. However, when questioned as to how she has changed, many of the responses were consistent with her behavior prior to the accident. For instance, one witness testified that before the accident, she found Ms. Touchard sitting alone in a dark office, refusing to talk to anyone. Likewise, after the accident, witnesses stated that she continued to seek solitude and was withdrawn. The witnesses also testified that before the accident Ms. Touchard would become depressed and cry. Most of these assertions were confirmed by Ms. Touchard. Both the medical and lay testimony was uncontradicted that Ms. Touchard was emotional and suffered from depression before the accident of April 1, 1996.
Based on the evidence presented, Ms. Touchard had an extensive mental history, and the trial court apparently found that she did not prove that she suffered any new mental injuries as a result of defendant's conduct. Faced with the choice of whether to believe plaintiff's contention that she suffered an exacerbation, the trial court refused to do so. After reviewing the entire record, we find the trial court's conclusion that Ms. Touchard did not suffer any injuries as a result of defendant's fault was supported by the record, and not clearly wrong.
We also note that the court of appeal erred in making a distinction between physical and mental injuries. The trial court made no distinctions between mental and physical injuries, the trial court simply found that Ms. Touchard did not suffer any injuries as a result of defendant's fault. While the court of appeal agreed with the trial court that Ms. Touchard failed to establish that she suffered any aggravation of physical injuries, it disagreed with a finding that Ms. Touchard did not suffer an aggravation of her pre-existing mental injuries. In reaching this conclusion, the court of appeal relied primarily on our decision in Moresi, 567 So.2d 1081 (La.1990). The court of appeal pointed out that Moresi created an exception to the general rule that a defendant is generally not liable for negligent acts which cause only mental disturbances. Id. at 1096. Under Moresi, a plaintiff may recover for mental injuries only when the situation creates the "especial likelihood of genuine and serious distress, arising from special circumstances, which serves as a guarantee that the claim is not spurious." Id. at 1096. The court of appeal noted that Ms. Touchard had been involved in five previous automobile accidents; and had undergone numerous surgeries, including three to her back. It also accepted the "uncontradicted" testimony of Dr. Dawes that he believed Ms. Touchard's mental injuries were aggravated by the accident of April 1, 1996. Touchard at 1237. Because we conclude that the court of appeal erred in substituting its judgment for that of the trial court, we decline to address the legal issue of whether the facts and circumstances of Ms. Touchard's accident constitute "special circumstances" under our decision in Moresi v. State, Through Dep't of Wildlife and Fisheries, 567 So.2d 1081 (La.1990).

*1206 CONCLUSION
Accordingly, after reviewing the record in its entirety and applying the appropriate standard of appellate review, we hold the trial court did not commit manifest error in finding that there were no injuries to Ms. Touchard which were caused as a result of the defendant's fault. As we have reinstated the trial court's judgment, the issues of apportionment of fault and damages are moot.

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed. The judgment of the trial court finding plaintiff suffered no injuries as a result of defendant's acts, and dismissing plaintiff's suit is reinstated. All cost of this appeal are assessed to plaintiff.
LEMMON, J., subscribes to the opinion and assigns additional reasons.
JOHNSON, J., concurs.
LEMMON, J., Subscribing to the Opinion and Assigning Additional Reasons
On original hearing, this court granted the defendant's application for certiorari and peremptorily reversed, without briefing or oral argument,[1] the judgment of the court of appeal. 99-3577 (La.2/18/00), 754 So.2d 953( Calogero, C.J., and Lemmon, J., voting to grant and docket for argument). The peremptory reversal was based on the reasons assigned by the dissenting judge on the intermediate court who, citing Moresi v. State, Through Dep't of Wildlife and Fisheries, 567 So.2d 1081 (La.1990), opined that an award of damages for mental injury, in the absence of physical injury, should only be made when there are special circumstances.
On rehearing, I write separately to point out that the Moresi case entailed a claim for mental anguish caused by conduct of the defendants that did not involve physical impact. In the present case, there was undisputed physical contact (although the intensity of the contact was disputed), and any rule against awarding damages for mental injury in the absence of physical injury should not be applied automatically. In a case that involves physical impact, it is up to the trier of fact to decide, under a preponderance of the evidence standard, whether the impact caused any physical or mental consequences.
I agree that there is sufficient evidence to support the decision of the trier of fact in this case, and that the judgment of the court of appeal should be reversed.
NOTES
[1] On cross examination, Ms. Touchard admitted that she had a slight headache on the morning before the accident occurred. She further testified that she suffered regularly from headaches due to her pre-existing sciatica nerve problems.
[2] Deputy Brett Pryor of the Carencro City Police Department investigated the accident and testified at trial. He stated that he questioned Ms. Touchard and Mr. Breaux about how the accident occurred. Mr. Breaux told Deputy Pryor that the accident happened when Ms. Touchard was about to take off from the stop sign; she hesitated and stopped again; he anticipated her moving out of the area and proceeded forward striking her vehicle from the rear. Ms. Touchard only stated that the accident occurred when she was at the stop sign and was hit from behind.
[3] Dr. Segar's deposition was admitted in lieu of live testimony.
[4] Dr. Segar testified that several x-rays were taken after the accident and compared to those taken prior to the April 1, 1996 accident.
[1] Peremptory reversals should be used very sparingly by this court, and this court's overuse frequently comes back to haunt us, as in this case. A certiorari court should not merely be concerned with error correction (which is the function for which intermediate courts are established in a three-tier system), but should primarily be concerned with addressing the most important legal issues of the time and providing guidance to lower court judges, lawyers and law professors by thorough and concise analysis and resolution of those issues.