AMY, Judge.
The plaintiff appeals the trial court’s determination that she failed to sustain the applicable burden of proof in her suit seeking rescission of the sale of a minivan. For the following reasons, we affirm.
*889 Factual and Procedural Background
The plaintiff, Maxie Payne, purchased a 1998 Mercury Villager from the defendant, John Decker Lincoln Mercury, Inc., in June 1998 at a “Coliseum Salé” in Alexandria, Louisiana. She contends that she informed the salesmen that she wanted the minivan in order to install a wheelchair lift for her wheelchair-dependant grandson. Ms. Payne asserts that one of the salesmen assured her that a lift could be installed in the van. As the months went by, Ms. Payne became aware that the minivan was not suitable for a lift.
The record indicates that in November 1998, Ms. Payne sought a new minivan from the dealership due to what she contends were assurances regarding the possibility of installing a lift. The dealership offered to purchase the Villager from Ms. Payne, but she refused the offer as she contends that the figure offered was too low. She also refused an offer to replace the Mercury Villager with a full-sized van of approximately the same year and mileage as the Villager. Ms. Payne explained that she wanted a new van.
A Petition for Rescission of Sale Contract was filed in September 1999, naming John Decker Lincoln Mercury as a defendant. She alleged that “the principle cause of entering into the contract was the ability of the van to be fitted with a wheelchair lift[,]” the salesman assured her that the wheelchair could be fitted with the lift, and that she became aware that the van could not be fitted with a lift. She 1 ¡¡sought rescission of the sale and return of the purchase price, including all related expenses.
Following a hearing, the trial court found in favor of the defendant, concluding that the version of events offered by the plaintiff and witnesses presented on her behalf was unclear as to the occurrence and substance of conversations at the time of the sale. The plaintiff asserts error in the trial court’s determination.
Discussion
The plaintiff contends that the testimony presented at trial indicates that she was informed that the Villager could be equipped with a wheelchair lift. She points to her own testimony indicating that, before purchasing the van from John Decker Lincoln Mercury, she had contacted both the Toyota and Dodge dealerships seeking a van that could be equipped with a lift and that had rear air conditioning and had been informed that those dealerships did not have a minivan that could be so equipped. She testified that she then went to the “Coliseum Sale” in Alexandria and was approached by Cobin Hebert and James Bryant, salesmen for John Decker. She testified that she informed both of them of the need for a lift and that Mr. Bryant assured her that it could be equipped for her needs. Additionally, Ms. Payne’s daughter, Tawanda May, testified that she accompanied her mother on the day of the sale and was present when assurances were made. Ms. Payne also presented the testimony of Colleen Nu-gent, a case worker assigned to Ms. Payne’s grandson, who explained she attempted to assist Ms. Payne in having the van equipped with a lift and then in negotiations with John Decker following the sale. Ms. Nugent testified that, during her conversations with dealership representatives in November 1998, she too was told that the van could be equipped with a lift. In light of this testimony and 13the salesmen’s inability to recall conversations regarding the necessity of a lift, Ms. Payne contends that the trial court’s determination was clearly in error and must be reversed.
The Louisiana Civil Code provides the following guidance with regard to error in the formation of contracts.
Art.1948. Vitiated consent
*890 Consent may be vitiated by error, fraud, or duress.
Art.1949. Error vitiates consent
Error vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party.
Art.1950. Error that concerns cause
Error may concern a cause when it bears on the nature of the contract, or the thing that is the contractual object or a substantial quality of that thing, or the person or the qualities of the other party, or the law, or any other circumstance that the parties regarded, or should in good faith have regarded, as a cause of the obligation.
In reasons for ruling, the trial court explained, in part:
As I appreciate the burden in this particular case, Ms. [Payne] has the, the burden of proving, of the course [sic] the standard is by a preponderance, that she was misle[a]d on the principle [sic] cause of this particular contract, into believing that she could receive a lift installed in the size vehicle she had requested. Ahm, that’s about the only thing clear in the whole issue. After that we get into confusion resulting with the discussions that were had and the Court will notice that ah, a point not brought up by either counsel is, the fact that she had been looking at other vehicles, had had discussions concerning lifts in mini vans, ahm, months later can come back to cloud as to who said what, and what conversations were held. That’s one of the factors we look at as to how many different people we talked to. I say that because there were some concerns I have with the relationships between Ms. [Payne] ... and ah, both Mr. Hebert and Mr. Bryant. Ah, there were pieces of discussions ah, that even Mr. Bryant admitted, there were discussions concerning a grandchild that was handicapped. There were also discussions that the handicap issue was one of the primary concerns for rear air, and we needed to circulate back with him because his temperature was so clear. Basically, what I’m saying is, there were lots of differing issues that blended ah, together that can explain or confuse pieces of all the | testimony. In that regard, this is not unlike most trials. I checked the notes, there are no notes in the sales documents, no discussions of who or how a lift would [be] installed, no mention as to sending anything else, there’s no documentation whatsoever concerning ahm, a lift. There is documentation concerning the fact that there are two salespersons, however, page nineteen of Defendant’s Exhibit Five, just list[s] one salesperson. Ah, it lists him by the last four digits of [] his social security number. I don’t have the benefit of knowing whose that was, clearly there was a lead sales person and this one, the Court accepts Mr. Hebert would have the lead, and Mr. Bryant would have been doing the financial matter, ah, that was done after it. Ahm, discussions that were held at the tent sale, ah, seem to be amorphous at best; ah, they, they move from group to group; ah, Tawanda overhearing some, not overhearing others, participating in some: Ms. Payne, ah, some confused as to who they had talked to; even discussions with Mr. Landry, although that was concerning mileage issues only. Ah, again, if the central theme of this was to get a lift, ah, it’s strange that it wasn’t mentioned anywhere else besides that. The fact that there was no mention of misrepresentation that the Court can find until several months after; and I understand it takes a while to start *891 finding out that you can’t get this cured. But the fact that there was no misrepresentation that was brought to the attention of the dealership ah, in November, ahm, gives me some concern that, with that much time and having talked to other dealerships, there have been [sic] some confusion as to who actually said what about which vehicle. As the plaintiffs would have to show by a preponderance that the ability to install a lift was the deal making or breaking issue, ah, I would have to find, I believe, under the law, that the sales people were made aware that this was the condition precedent for buying this van. And that it wasn’t rear air, it wasn’t ah, mileage, it wasn’t the others that, that was the condition precedent for buying this van. That she could install the lift. And then I would have to find that they gave her blind assurances with no basis on which to act, because we all know, from a factual basis now, the lift can’t go into that particular van. When I look at the [] totality of the circumstances, I don’t find the Plaintiff carried the burden of proof that the seller was put on notice that the condition precedent for buying this particular van was that a lift could be placed ah, in the van. I, I think it was an unfortunate confusion of several attempts to buy; I think there was mistake that was made, but I don’t think it was a mistake that rises to a 1949 Article error to vitiate the consent. I’m hesitant to put a duty on a dealership or a seller to know the ramifications of a specialized requests if not’s clearly articulated or they’re actually put on notice. Ahm, this is not to say that Ms. Miles didn’t think that she had ah, expressed an interest in having ahm, a van that was capable of taking a lift, and more particularly a mini van that would take a lift. But I don’t find by a preponderance that that shifted to an awareness or a should have known to the dealer that they should not have sold that vehicle | swithout first making the assurances, to themselves that, that was what made the deal. There’s a difference in saying, I can’t deny it, and I don’t remember it. The testimony, as I go back to look at the two sales people were, this is a big deal, this is unusual, we would have remembered it, the fact we don’t remember it, I’m not gonna say under oath, it didn’t happen, but that’s something I would have remembered. So, i[t] falls just short of reaching the burden of shifting the duty to knowing or should have known, that the primary cause was that lift, and having reached that conclusion, I have no choice but deny the Plaintiffs claim, at cost.
Our review of the record reveals no error in this determination. Although Ms. Payne and Tawanda testified as to the June 1998 purchase of the van and indicated that the salesmen were aware of the need for the lift, the trial court was not required to accept this testimony, even if essentially consistent, nor was it required to find that any information provided by the plaintiff was specific as to the necessity of a lift. Rather, the trial court was made aware that several individuals from John Decker were involved in the sale, that the role played by the individual salesmen and the information provided to and by each was unclear, and that the testimony offered by Colleen Nugent as to her conversations with individuals at the dealership was inconsistent. Although the salesmen did not offer unequivocal denials that assurances were made, the trial court pointed to testimony indicating that such an assurance was out of the ordinary and would likely have been recalled. The following exchange between Cobin Hebert and defense counsel reflects this testimony:
*892 Q. Did you at any time talking with Ms. Payne, at the coliseum sale, ever discuss, or tell her that a wheelchair lift could, could go in the, the ah, Mercury Villager van that was ultimately sold to her?
A. I’ll be, I’ll be, I’ll really, if I, if she would have discuss[ed] that, I would have talked to John about; but as far as that goes I don’t remember, as far as her talking about anything like that.
IsQ. Would that be something that normally, if it was discussed or asked of you, you would have gone and, and find out, and remember discussing that?
A. Sure. Sure, that’s a big thing.
Q. Can we assume that if you don’t have specific recollection of that, that you’re saying that it wasn’t discussed?
A. Exactly.
Regarding the question of whether any conversation occurred as to the necessity of a lift, James Bryant testified:
Q. Okay. Do you think that if ah, did you ever tell Ms. Payne at any time, at the coliseum sale, that that Mercury Villager that she was purchasing, could be equipped with a wheelchair lift?
A. No sir, I didn’t, because I have no knowledge that it could be, one way or other, and that was never asked.
Q. Okay. And, specifically, if there was any discussion in your presence about a wheelchair lift, would you have recalled that?
A. Yes sir, ... if there had been a discussion of that, yes sir, I would have known and I — (interrupted.)
Q. And your testimony is, there was not.
A. There was not.
The trial court apparently chose to credit this testimony as to the uniqueness of questions regarding the conversion of vans and their failure to recollect such a conversation with the plaintiff. The court’s determination to credit this testimony against those of the plaintiff and her witnesses as well as the absence of evidence indicating any reporting of inaccurate assurances prior to November 1998, months after the June 1998 purchase, is the type of evidentiary decision best left to the trier of fact and not one requiring reversal. See Touchard v. SLEMCO Elec. Found., 99-3577 (La.10/17/00); 769 So.2d 1200. Accordingly, we affirm the judgment rendered in favor of the defendant.
DECREE
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assigned to the plaintiff, Maxie Payne.
AFFIRMED.
COOKS, J., dissents and assigns reasons.