DUFRESNE, Judge.
This is an appeal by Cynthia Bender Orlando, plaintiff-appellant, from a judgment dismissing her suit for workmen’s compensation benefits against her employer, General Electric Credit Corporation and its workmen’s compensation insurer, Electric Mutual Insurance Company, defendants-ap-pellees. Because we find that the trial court committed manifest error in finding that plaintiff’s permanent and total disability did not result from a work related injury, we reverse in part, affirm in part, and render judgment on all issues not reached by the lower court.
On March 24, 1976, Cynthia Orlando was employed by General Electric Credit Corporation as an accounts clerk. During the course and scope of her employment she opened an upper file cabinet drawer, but failed to close it properly. She then stooped to retrieve a file from a lower drawer, and when she stood up, she struck her back on the improperly closed upper drawer which had rolled back out due to its own weight. That this accident occurred is not contested by the appellees.
As a result of this injury, Mrs. Orlando suffered severe and immediate back pain. She called her physician on the day of the accident and he prescribed medication. However, two weeks later she continued to suffer pain, and consulted Dr. Irving Cahen, an orthopedic surgeon. His diagnosis was that she had suffered an injury to the lumbar vertebral zone, and that there was a “slight narrowing of the L5-S1 segment with minor irregularity of the articular margins of L-5.” He prescribed muscle relaxants and temporary use of a back brace. His prognosis was that she should have recovered with no residual effects, within three to four weeks. She returned for further examination on April 27th, at which time Dr. Cahen recommended another week to ten days of treatment. As of May 19th, she had not returned to Dr. Ca-hen, and he discharged her on that date as fit to return to work. However, she never returned to her employment.
On about June 1, 1976, Mrs. Orlando underwent an unrelated hysterectomy operation on advice of her gynecologist. Some six weeks later she returned to Dr. Cahen’s office complaining of severe back pains which had commenced two weeks earlier as she was sitting up in bed. She was seen at that time by Dr. Kenneth Adatto, an associate of Dr. Cahen’s, who determined that she probably had a ruptured disc and ordered her hospitalized. She was admitted on July 21st, and tests revealed a disc abnormality at the L5-S1 level of the back. In the history which she gave to the examining physicians at the hospital she reported knowing of no trauma at the onset of pain in late June or early July. Obviously she made no connection then between the filing cabinet accident and the pain. Surgery to correct this condition was performed by Dr. *752 Manale, a third associate of Dr. Cahen, on August 10th. In a post-operative report of October 1st, Dr. Manale made reference to the patient history relating to prior trauma as follows:
In the section labeled “History and Physical Findings” you will see a sentence which reads as follows: “The patient could not recall previous trauma.” This is an inaccuracy on my part for which I apologize. I do not believe that there is any question about the history of trauma and this of course has been adequately documented by Dr. Cahen’s record as well as remarks of the patient later on.
Since that time, Mrs. Orlando has undergone surgery several more times, the last being in February, 1980. She nonetheless continues to suffer back problems which have rendered her permanently and totally disabled. This disability is well documented in the record, and not seriously contested by appellees.
In late August, 1980, she was also hospitalized for pseudo tumor ceribri syndrome, a condition related to excessive fluid pressure in the brain.
In response to Mrs. Orlando’s original injury, defendants paid her workmen’s compensation benefits from the date of the accident until her discharge by Dr. Cahen on May 19, 1976. Following her surgery in August of that year she notified her employer that she was still disabled and requested further payments. General Electric and their insurer refused to comply and suit was filed on January 4, 1977, to collect' these benefits. On April 27, 1977, .defendants, reserving all rights to contest the claim at trial, agreed to pay all past due benefits, and to continue paying future benefits until judicial resolution or compromise of the suit. Until the date of judgment, they paid weekly compensation, and most medical bills related to the back surgeries. They refused to pay for the pseudo-tumor hospitalization, however, claiming that this condition was not related to the original injury.
At trial, plaintiff sought to prove that the medical payments were often made late, and then only after repeated requests by her attorney. She also urged that the employer’s refusal to pay several bills allegedly related to the back problem, as well as those for the pseudo-tumor condition, was arbitrary and capricious, and that penalties, attorney fees and interest are therefore owing. Her final allegation was that her weekly benefits were incorrectly calculated.
Defendant’s basic case was that all medical problems after plaintiff’s discharge by Dr. Cahen on May 19,1976, were either not related to the original accident or brought on by some intervening cause, and therefore that no compensation was owing after that date.
After trial on the merits, the trial judge concluded that all post-May 19, 1976, medical problems were not caused by the work related injury. Her suit was therefore dismissed.
Plaintiff now appeals, alleging that this factual finding of the trial judge was manifestly erroneous. We agree.
It is well established that where the trier of fact makes a finding which is clearly wrong (manifestly erroneous), an appellate court is empowered to correct that error, Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
The case in plaintiff’s favor is as follows. It is stipulated that plaintiff suffered an injury to her back on March 24, 1976, when she stood up beneath a file cabinet drawer during the course and scope of her employment, and medical evidence is conclusive that this injury was at the L5-S1 level. There is no dispute as-to her subsequent back problems and consequent total and permanent disability. As to the cause of these subsequent problems, plaintiff put into evidence the opinions of three treating physicians, all of which were that the file cabinet injury was responsible for these problems. Plaintiff’s own testimony was that between March 24th and August 10, 1976, the date of her first surgery, she did not suffer any further trauma to her back. In this court’s opinion, the evidence overwhelmingly established plaintiff’s case.
*753 In regard to defendants’ evidence, while we are prepared to review their case in its most favorable light, our difficulty is that we find no evidence whatsoever which supports that case. After an exhaustive review of all medical evidence in the record, we are unable to find any medical opinion which disputes, or even remotely casts doubt, on the opinions of plaintiff’s three treating physicians that the file cabinet injury caused the disability. Neither do we find any medical evidence which so much as suggests an alternative cause of the disability, or any possible intervening cause. Finally, the opinions of plaintiff’s doctors are reasonable in light of the fact that the first surgery was performed at the exact location of the original injury, i.e. at the L5-S1 level of the back. Under these circumstances, we can only accept the uncontro-verted expert testimony of these doctors as true. Louisiana Power and Light Co. v. Roberts, 408 So.2d 49 (La.App. 3rd Cir.1981).
Appellees contend here, however, that the disability was the result of an intervening cause, and this was apparently the conclusion of the trial court. Specifically, they aver that her sitting up in bed a month after the hysterectomy operation was the actual cause. The problem with this argument is that appellees are confusing symptoms of the injury with causation. That the onset of pain was indeed a symptom is shown by the unrefuted August 23, 1976 opinion of Dr. Manale, submitted after the operation earlier that month, which is as follows:
“Apparently [Mrs. Orlando] did not connect the symptoms of a ruptured disc with the trauma she sustained back in April or March.” (emphasis added)
On these facts, we refuse to find that merely sitting up in bed was the cause of the back problems, especially when appellees put on absolutely no medical testimony to remotely suggest that this may have been the case. Neither was any evidence presented to indicate that a hysterectomy might cause back injury, or produce any weakening of the back which might lead to injury by a change of posture.
We finally note that in his reasons for judgment, the trial judge concluded that plaintiff was attempting to deceive the court. The testimony at issue related to circumstances surrounding the onset of back pain after the hysterectomy. A physician who took her history before the August, 1976, operation, but who did not testify at trial, noted that plaintiff reported hearing a “crackling” or “snapping” noise in her back on attempting to get out of bed. At trial, plaintiff’s testimony was that she didn’t think she had reported any such noise, but rather reported that it felt as though someone were playing a xylophone on her back. Whether plaintiff had a lapse of memory or was indeed lying on this point in an attempt to improve her case, we nonetheless fail to see what bearing this had on the issue of causation. This is particularly so in view of Dr. Manale’s two reports quoted above, which show that plaintiff originally made no connection between the onset of pain and the work related injury, and could not possibly have intended at the time of the report in question to perpetrate a fraud on her employer. For the foregoing reasons, we hold that the trier of fact was clearly wrong in finding that plaintiff’s injury was not caused by her work related injury, and therefore reverse that determination, finding instead that that injury was the cause of all subsequent back problems. However, we also find that the trial court correctly found plaintiff to be totally and permanently disabled, and we therefore affirm that finding.
Because of the trial court’s erroneous finding as to causation, the remaining issues at trial were not resolved. However, as the record before us is complete, this court is empowered to render a decision on those issues. Gonzales v. Xerox Corp., 320 So.2d 163 (La.1975).
As to the pseudo-tumor ceribri syndrome, we find that plaintiff proved by a preponderance of the evidence that this condition was the result of steriod treatments during hospitalization for her back problem. Dr. Wilensky’s detailed testimony *754 was to this effect, and the only evidence to the contrary was the tentative report of Dr. Vogel. In that report, he indicated that steroids do not generally produce that condition, but they might well do so if a patient had a negative reaction to such drugs. Hospital records indicate that in 1977, plaintiff did indeed have an adverse reaction to steroid treatment. In our opinion this evidence is sufficient to meet plaintiffs burden of proof, and we so find.
On the issue of arbitrary and capricious failure to pay benefits, we find that defendants did so act. It is now well settled that an employer cannot continue to rely on an early medical prognosis of the employee’s recovery to deny coverage once he has received further medical evidence indicating that a continuing disability was the result of the original injury. Walker v. Gaines P. Wilson & Son, Inc., 340 So.2d 985 (La.1976).
Here, defendant duly paid compensation benefits from the time of the accident on March 24, 1976, until May 19, 1976. On this last date it received a report from Dr. Cahen, plaintiff’s treating physician, which discharged her, certified that she was fit to return to work, and concluded:
“It is believed that the patient should clear this abnormality without residual impairment of vertebral function.” (emphasis added)
Relying on this report, defendants properly terminated benefits.
However, in mid-Oefober of 1976, defendants were sent a request for further benefits based substantially on Dr. Manale’s reports of August 23, and October 1, quoted in part above. While admittedly neither of those reports states unequivocably that the file cabinet injury caused the back problem, we deem those reports more than adequate to have put defendant on notice that in all probability the injury caused this subsequent disability. However, in response to these reports, defendants made no effort to have plaintiff evaluated by another physician, or to contact Dr. Manale for any clarification of his reports which they might have thought necessary. Instead, they continued blindly to rely on the May 19, 1976, discharge from Dr. Cahen and continue to do so before this court in the face of three subsequent treating physicians’ uncontested reports directly relating the file cabinet accident to plaintiff’s permanent and total disability. Under these circumstances, we find that defendants’ refusal to resume compensation benefits within 60 days of demand and to timely pay all related medical expenses after October 15, 1976, was arbitrary, capricious and without probable cause. La.R.S. 22:658; Walker v. Gaines P. Wilson & Son, Inc. supra.
Defendants further rely on an alleged intervening accident as grounds to have reasonably withheld coverage. As we have already addressed this issue above, we only reiterate here that in the complete absence of evidence of such an accident, and in the face of Dr. Manale’s report indicating that the onset of pain when plaintiff sat up in bed was a symptom of the disc injury, previously documented by Dr. Cahen at the L5-S1 level, we find that defendants were also arbitrary and capricious in rejecting plaintiff’s claims on these grounds.
We next turn to plaintiff’s specific claims for penalties on medical bills and our determination thereof as follows:
Name
Amount
Action by Defendants
1. East Jefferson Hospital
$4,149.21
Paid Late
2. Dr. Bernard Manale
1.722.50
Paid Late
3. Dr. Bernard Manale
374.00
Paid Late
4. St. Charles Gen. Hospital
2,540.00
Paid Late
5. St. Charles Gen. Hospital
2,484.65
Paid Late
6. Tulane Medical Center (Dr. Llewellyn)
1,350.00
Paid Late
7. Tulane Medical Center (Dr. Llewellyn)
2.805.50
Paid Late on $2,753.00
8. Tulane Medical Center
2.862.50
Paid Timely
9. Tulane Medical Center
122.35
Paid Timely
10. Tulane Medical Center
117.65
Paid Late
11. Tulane Medical Center
1,224.00
Unpaid
12. Tulane Medical Center (Hospital)
2,950.18
Paid Timely
13. Tulane Medical Center (Hospital)
4,090.75
Paid Timely
14. Tulane Medical Center (Hospital)
636.98
Paid Late
15. Tulane Medical Center (Hospital)
6,157.94
Paid Late
16. Tulane Medical Center
120.00
Paid Late
*755 Name
Amount
Action by Defendants
17. Tulane Medical Center (Hospital)
2,027.30
Unpaid
18. Montelepre Hospital
7,591.00
Paid Late
19. Dr. DeBoisblanc
310.00
Paid Late
20. Dr. DeMouy
116.50
Paid Late
21. Dr. Kenneth Vogel
2,095.00
Paid Late
22. Surgico Unit
799.40
Paid Late
23. Dr. Leroy Stagni
1,992.00
Paid Late
24. Dr. Leroy Stagni
1,596.00
Unpaid
25. Niagra Therapy
1,483.00
Paid Late
26. Dr. Dysart
345.00
Paid Late
27. Dr. Richardson
75.00
Paid Late
28. Dr. Richardson
165.00
Paid Late
29. Mid South Ambulance
65.00
Paid Late
30. Dr. Maria Palmer
237.00
Paid Late
31. Dr. Joseph Polotta
75.00
Paid Late
32. Surgico Pads
72.38
Paid Late
33. Out of pocket expenses
1,323.59
Paid Late
34. Out of pocket expenses
1,167.16
Unpaid
35. Medically prescribed waterbed
622.34 (est.)
Refused to pay
Of the above, no penalties are owing on Nos. 8, 9, 12 and 13, as those were paid timely. Similarly, no penalties are owing on Nos. 11 and 17, because these arose from treatment of the pseudo-tumor condition, which defendants had sufficient medical evidence to believe was not related to plaintiff’s back problems when they disputed these bills. In regard to Nos. 23 and 24, defendants assert that as these bills were for chiropractic treatments which they feared would exacerbate the back problems, they had good reason to resist payment. In light of plaintiff’s unrefuted testimony that two of her treating physicians thought such treatment might be beneficial and that she received some relief from pain from these treatments, and in the absence of any medical opinion to substantiate defendants’ apprehensions, we find their actions in this regard arbitrary. Gourdon v. Rockwood Ins. Co. 368 So.2d 1156 (La.App. 3rd Cir.1979). We likewise find them arbitrary in refusing to purchase the waterbed after receiving a physician’s prescription for it.
Of the remaining untimely paid bills, defendants admit that some $18,000 of these would warrant imposition of penalties if they are found to have acted arbitrarily. They contend, however, that the balance of the bills should not be considered as paid untimely because the complexity of this case made a turn around time of three to six months from receipt of demand to payment reasonable. While we might be inclined to accept this argument, if only a few of the bills had been paid late, and there was no question of bad faith, we refuse to do so here. Of the above list of 35 items, 29 were either paid late or not paid at all. In addition, plaintiff received at least 15 past due notices and six letters from creditors and collection agencies threatening legal action. Her attorney made numerous telephone calls and sent no less than 15 letters to defendants seeking payment of overdue bills. These facts clearly negate any good faith effort on defendants’ part to deal effectively and timely with plaintiff’s claims, and we therefore hold that penalties are owing on all bills paid late or left unpaid without reasonable cause (this total amounts to $42,536.30).
Another issue before us is the amount of weekly compensation benefits owed plaintiff. The record indicates that plaintiff’s salary was $5,000 per year. The proper benefit is, therefore $64.00 per week instead of $63.90 as previously paid to the plaintiff by the defendants.
Plaintiff is entitled to attorney fees under the provisions of L.R.S. 23:1201.2. From the review of the record and the complexity of this case, we award attorney’s fees of $2,500.00 for the trial of this matter and an additional $500.00 for the preparation and argument on appeal before this court.
For the foregoing reasons, judgment is hereby rendered in favor of Cynthia Bender Orlando, plaintiff and against General Electric Credit Corporation and Electric Mutual Insurance Company, defendants in solido as follows:
1. Plaintiff is reinstated to workman compensation benefits in the amount of $64.00 per week as she is totally and permanently disabled.
2. Plaintiff’s future medical expenses relating to her permanent and total *756 disability are to be paid when submitted to defendants for payment.
3. Plaintiff is entitled to the following sums:
A. Penalty of 12% on medical bills and hospital expenses not paid timely (12% of $42,-536.30) $5,104.36
B. Unpaid Bills:
Out of pocket expenses 1,167.16
Dr. Stagni 1,596.00
Tulane Medical Center 2,027.30
Tulane Medical Center 1.224.00
6,014.46
C. Penalty of 12% on lump sum payment of compensation benefit paid after filing of suit ($3,386.70) 406.40
D. Shortfall on weekly compensation payments between $63.90 and $64.00 29.46
E. Expert Fees Dr. Stagni Dr. Wilensky 125.00 200.00 325.00
F. Deposition Bill Dr. Stagni 179.24
G. Attorney Fees 3.000.00
TOTAL: 15,058.92
together with legal interest on all expenses and medical bills unpaid and on the lump sum compensation benefits from date of judicial demand until paid.
All costs of this proceeding in the district court and in appellate court are to be paid by the defendants.
AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.