781 So.2d 598 (2001)
Ronald HASNEY
v.
ALLSTATE INSURANCE COMPANY, et al.
No. 2000-CA-0164.
Court of Appeal of Louisiana, Fourth Circuit.
February 7, 2001.
*600 Paul A. Tabary, III, Dysart & Tabary, L.L.P., Chalmette, LA, Counsel for Defendant-Appellee.
Kenneth B. Krobert, Borrello & Dubuclet, Metairie, LA, Counsel for Defendant-Appellee.
C.J. Murray, J. Van Robichaux, Jr., Chalmette, LA, Counsel for Plaintiff-Appellant.
Court composed of Judge BYRNES, Judge PLOTKIN, Judge McKAY, Judge BAGNERIS, and Judge TOBIAS.
TOBIAS, Judge.
Plaintiff, Ronald Hasney ("the plaintiff"), sued for personal injury damages allegedly sustained when his parked van was struck by a vehicle operated by defendant, Thu Ngoc Tran ("Tran"). A jury found that the plaintiff was not injured as a result of the accident and his motion for a new trial was denied. The plaintiff appealed. We affirm.
As his first assignment of error, the plaintiff contends that "the Jury was Clearly Wrong in Finding that [plaintiffs] Injury claim was Fraudulent." First we must point out that the jury did not find that the plaintiffs claim was fraudulent. In response to interrogatories, the jury's only finding was that the plaintiff was not injured as a result of the incident that is the subject of this litigation. Specifically, the jury responded as follows:
Was the plaintiff, Ronald Hasney, injured as a result of this accident?

NO

* * *
Because of the wording of the question and the fact that credibility was at issue, the jury's answer can be read in several different ways. The question of whether the plaintiff was lying was not directly presented to the jury. Thus, fraud was not specifically found.
The facts of the underlying accident are not at issue. On 27 February 1997, a vehicle driven by Tran was struck by a vehicle driven by the defendant, Delores Lucas[1] ("Lucas"), causing Tran's vehicle to strike the plaintiffs parked vehicle. The parties stipulated that Lucas was solely at fault. Consequently, Tran and his insurer, American National Property & Casualty Company, were dismissed. The main issue at trial was whether the plaintiff was in his vehicle at the time of the accident, thus, raising the issue of whether any injuries asserted by the plaintiff were caused by the accident.
Lieutenant Jeff Lee of the St. Bernard Parish Sheriff's Department was one of the investigating officers at the scene of the accident. He testified for the defense concerning his standard procedure in such instances:
A .... [M]ainly the protocol is when you get there you determine who owns the vehicle; was anybody in the vehicle; *601 was anyone hurt. It is just a basic protocol that you go by on the scene. Primarily, is there anybody hurt; who owns the vehicle, et cetera.
Q. You did, in this accident, interview Mr. Hasney, is that correct?
A. Yes.
Q. And in your interview with Mr. Hasney did he ever advise you that he occupied that vehicle when the accident occurred?
A. No, sir, he did not.
After refreshing his memory by reviewing the police report which he wrote in part, Lieutenant Lee confirmed this testimony. Later on cross-examination he testified that the general protocol when he arrives on the scene is that the "[n]umber one priority, is anybody hurt, is anyone injured."
Sergeant Carroll Arcement of the St. Bernard Parish Sheriffs Department was the main investigating officer on the scene and was in charge of preparing the accident report. He noted that the accident report did not indicate whether anyone was in the van when it was struck. Following standard procedures the presence of an occupant would have been noted on the report had the officer been aware that anyone had been in the vehicle. The plaintiffs counsel cross-examined Sergeant Arcement on this issue:
Q. Sergeant Arcement, where does it say on here that nobody was in the van?
A. Where vehicle three is listed, it's listed as parked.
Q. It does not say no one was in the van, it just says it was a parked vehicle?
A. Parked vehicle and no one listed as the driver.
On re-direct, Sergeant Arcement clarified his last answer:
Q. If someone would have said they were an occupant, occupancy would have been marked on the report?
A. Correct.
The plaintiff testified that after the accident he immediately went inside his place of business because he felt safer there:
Q. Did you stop and talk to anybody?
A. No. My brother was coming through the door but I just went inside.
Q. Why? What were you feeling at this point?
A. Shook up.
* * *
Q. When you went back into the shop, what happened?
A. I just went behind the counter and I sat down at my desk that I have.
Q. Were your two brothers there?
A. Yes.
Q. Where were they?
A. One was by the door which headed outside and the other was behind the counter.
Q. Did they ask you what happened? Did they say anything to you?
A. I don't recall anything.
Q. Do you remember a time after the accident when the police came?
A. Yes, when they came to the shop one of them did.
Q. And what happened when the police came?
A. He arrived and he asked me whose van was on the outside, and I said it was my van, and he said was I driving the van and I said no, it was parked outside. And he said, "Do you have insurance and a driver's license?" And I said, "Sure."....
Q. Do you remember telling him that you were inside of the vehicle at the time of the accident?

*602 A. No, I don't recall that at all.
Q. Why didn't you tell him?
A. I never thought about something like that.
Q. After the accident, immediately after the accident, were you hurt?
A. You know, I don't know how to say it. You know, you always, it hurts, but it didn't hurtit is not like bleeding and cuts all over. I didn't consider myself hurt, no.
Q. All right.
A. If you broke your arm you would say, look, it is hurt. But I just hit the shoulder and I figured it was not hurt at all.
Q. All right. Do you know whether or not either of your two brothers talked to the police?
A. Not for sure, no.
Cross-examination elicited the following testimony from the plaintiff:
Q. I asked you [in deposition] if you knew of anybody that witnessed you inside the van at the time the van was hit and your answer was
A. Not that I can recollect.
Q. And you are telling us today that you recall your brother seeing you in the van?
A. No, I said I couldn't remember.
Q. But what you are saying today is
A. I just said I couldn't remember if he was coming towards the door or not.
Q. Did your brother ever tell you that day that he saw you inside the van?
A. Not that day, no.
Q. When did [he] tell you about this?
A. It was sometime after.
Q. When?
A. A month or two ago. Something like that.
Q. Just a month or two ago?
A. Um-hum (indicating affirmative response).
Q. You had never talked to your brothers about being in that van?
A. No, I have not talked to either one of them.
* * *
Q. And in addition to never telling anyone you were in the van, you never told anyone at the scene of the accident that you were injured?
A. Not that I can remember, no.
The plaintiffs brother, George Hasney ("George"), who worked in the family business with the plaintiff, testified that he was coming out of the shop door when he saw a van strike his brother's van while his brother was inside. George testified that he heard nothing of the initial impact that preceded the collision involving the plaintiffs van, but he did observe his brother inside the van at the time of impact:
Q. You saw him inside [the van]?
A. Yes, right inside the van.
Q. What happened after the impact?
A. He got knocked around in there.
Q. After that was over, what happened?
A. Then you always ask the question: Are you all right? He said he was okay, you know. And he got out and went inside to sit it out. He was kind of shook up, you know (indicating).
The plaintiffs other brother, Geron Hasney ("Geron"), also worked with him in the business. Geron testified that he had a view of the collision with the van through the glass doors of the family business premises and observed the plaintiff coming out of the truck. Immediately after the accident he asked the plaintiff how he was.
The report of the plaintiffs physician, John Olson, M.D., dated 10 April 1997, *603 states that the plaintiff was outside his truck at the time of the impact. That report is based on Dr. Olson's office notes from 27 February 1997, the date of the accident. On re-direct examination, Dr. Olson explained that his notes were subject to his own interpretation of what the plaintiff told him. He admitted it was possible that the plaintiff had not actually told him that he was outside the van when it was struck. Nonetheless, Dr. Olson's records indicate that the plaintiffs shoulder was injured when it was struck by the vehicle's door or door frame at the time of impact. Dr. Olson's records do not reflect a knee injury until several months later.
From the foregoing, it is obvious that the question of whether the plaintiff was inside or outside the van when it was struck is crucial to the outcome of the case. In this regard, questions concerning the plaintiffs credibility are especially critical. Essentially, the credibility of the plaintiff is the only issue in the case except for damages, if any, sustained as a result of the accident. Thus, the plaintiffs second assignment of error in which he complains of the trial court's refusal to allow him to present character evidence raises issues that could materially alter the outcome of the case. An error in this regard would not necessarily be a harmless error.
In his second assignment of error, the plaintiff specifically complains that the trial court sustained defense counsel's objection to the following question asked of Lieutenant Lee:
Do you know [plaintiff's] reputation for honesty in the community?
Defense counsel contends that the plaintiff failed to establish a proper foundation for character or truthfulness under La.C.E. art. 608 A(2) and that the witness from whom the plaintiff sought to elicit character evidence, Lieutenant Lee, would have only presented personal opinion evidence which does not meet the requirements of La.C.E. art. 608:
(1) The evidence may refer only to character for truthfulness or untruthfulness.
(2) A foundation must first be established that the character witness is familiar with the reputation of the witness whose credibility is in issue. The character witness shall not express his personal opinion as to the character of the witness whose credibility is in issue.
(3) Inquiry into specific acts on direct examination while qualifying the character witness or otherwise is prohibited.
Immediately prior to being asked about the plaintiffs reputation for honesty in the community, Lieutenant Lee answered the following questions asked by the plaintiffs counsel:
Q. You know Ronald Hasney?
A. Yes, sir, I know him from the community and having different dealings with him as far as his business goes.
Q. He changes locks for the sheriffs department sometimes?
A. Yes, I believe he has.
When the plaintiffs counsel next asked the witness the question about the plaintiffs reputation in the community, defense counsel's objection resulted in a bench conference. No transcript of the bench conference was made. Following the bench conference, the trial court announced that it would sustain the objection to Lieutenant Lee's testimony, but, contrary to the requirements of La.C.C.P. art. 1636C, failed to state any reason for ruling that the testimony was inadmissible. The plaintiff proffered Lieutenant Lee's deposition *604 testimony concerning plaintiffs character:[2]
A. Yes, sir. I know Mr. Hasney. As a Parish resident, I'm sure these gentlemen if they've ever had to have a key made, he's always been the person to go to so I knew Mr. Hasney not on a personal basis but on the basis that he's changed locks around the sheriffs office, he's done a lot of work for the department as far as locks and this, that, and the other so I knew Mr. Hasney.
* * * *
A. What I'm saying is that I know Mr. Hasney.
EXAMINATION BY MR. MURRAY [plaintiffs counsel]
Q. Do you know him to be an honest individual?
A. To the best of my knowledge.
Q. You've ever known him to lie to you before?
A. No.
Q. Do you know his reputation in the community as to whether he's an honest individual?
A. Yes, sir.
Q. And he is?
A. I would say he is.
Q. He's been a locksmith for a long time, hasn't he?
A. Yes, sir.
Q. In that same location in the same business?
A. Yes, sir.
Q. Over twenty years, correct?
A. I would say.
The plaintiff argues that at the time defense counsel first objected to Lieutenant Lee's character testimony, counsel did not object to the lack of a proper foundation. Defense counsel stated no basis for the objection on the record. To preserve an evidentiary issue for appellate review, it is essential that the complaining party enter a contemporaneous objection to the evidence or testimony and state the reasons for the objection. Kose v. Cablevision of Shreveport, 32,855 (La.App. 2 Cir. 4/5/00), 755 So.2d 1039, writ denied, XXXX-XXXX (La.6/16/00), 764 So.2d 964; Stephens v. Town of Jonesboro, 25,715 (La.App. 2 Cir. 8/19/94), 642 So.2d 274, writs denied, 94-2351 (La.11/29/94), 646 So.2d 400 and 94-2557 (La.11/29/94), 646 So.2d 400; LaHaye v. Allstate Insurance Co., 570 So.2d 460 (La.App. 3 Cir.1990), writ denied, 575 So.2d 391 (La.1991).
The plaintiff contends that if a lack of foundation was the basis for the objection, he should have been given the opportunity to lay a proper foundation, but was not allowed to do so. We may infer that the plaintiff was not given the opportunity to attempt to lay a proper foundation, if that was indeed the basis of the trial court's refusal to allow the testimony, from the fact that the plaintiff was forced to proffer Lieutenant Lee's deposition testimony instead of being given the opportunity to make a proffer by continuing to question Lieutenant Lee outside the presence of the jury. Such a proffer could have been made at that time or at a later time.
Although Lieutenant Lee was asked what the plaintiffs reputation in the community for honesty was, defense counsel contends that he only testified as to his personal opinion ("I would say he is.") which is not sufficient to establish general reputation under La.C.E. art. 608. State *605 v. Terry, 94-0622 (La.App. 1 Cir. 4/7/95), 654 So.2d 455, writ denied, 95-1180 (La.10/13/95), 661 So.2d 494. We agree that a very narrow and literal reading of Lieutenant Lee's proffered testimony could result in such a conclusion. However, witnesses generally do not testify with the same strict concern for the precise legal implications of their every word as would a lawyer. We feel that Lieutenant Lee's answer "I would say so" could just as easily be read as referring to his knowledge of plaintiff's general reputation in the community. Additionally, we note that the basis of defense counsel's objection to Lieutenant Lee's character testimony at the time the question was asked at trial could not possibly have been to the personal opinion nature of Lieutenant Lee's answer because at trial Lieutenant Lee was only asked about the plaintiffs general reputation in the community and he was never allowed to answer. At trial, Lieutenant Lee was never asked what his personal opinion of plaintiffs character was, and he never volunteered any such opinion.
In the case of Touchard v. Slemco Elec. Foundation, 99-3577 (La.10/17/00), 769 So.2d 1200, a case that is similar to one at bar, the Louisiana Supreme Court, on rehearing, reviewed the former jurisprudence and reminded courts of appeal that a trial court's or jury's findings of fact may not be set aside in the absence of manifest error or unless it is clearly wrong. When conflicting evidence is presented, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed. The factfinder's conclusions, if reasonable under the evidence, are never manifestly erroneous or clearly wrong if the fact-finder credits the testimony of one of two or more witnesses.
A review of the record as a whole demonstrates that the jury understood that the issue before it was whether the plaintiff was inside the vehicle at the moment of the collision and, more specifically, whether he sustained any injury as a result of that collision.
The jury was able to evaluate credibility. They heard the plaintiffs testimony, the plaintiffs relatives's testimony, the testimony of Dr. John Olson (who plaintiff saw the same day as that of the incident)[3], and the testimony of the various defense witnesses. The jury's determination must be given deference. A verdict should only be set aside when no reasonable trier of fact could conclude as the jury did. Touchard v. Slemco Elec. Foundation, supra; Stobart v. State, Dept. of Transportation & Development, 617 So.2d 880 (La. 1993).
Although the Louisiana Legislature has provided in La. C.E. art. 608 that one's reputation in the community (character) may be testified to under certain circumstances, it has also permitted the judge to limit evidence under circumstances when such is a waste of time or causes undue delay of the trial. See La. C.E. art. 403. A trial judge has much discretion to regulate the evidence a jury hears.
Here, the jury heard Lieutenant Lee testify that the plaintiff was a locksmith and that he had performed those services for many years for the St. Bernard Parish Sheriffs Office. Such, by implication, left the jury with the inference that the plaintiff was a person who could be trusted, because locksmiths, by the very nature of *606 their profession, perform a service to prevent thefts and escapes. For Lieutenant Lee to state that Hasney had a reputation in the community as a truthful and honest person could be viewed as repetitious.
In the context of this case the exclusion of the reputation evidence was a technical error in light of positive law allowing such evidence, but the error was harmless when one reads the transcript as a whole. And a reviewing court is prohibited from reversing a fact-finder's decision if an error is harmless. Gonzales v. Xerox Corp., 320 So.2d 163 (La.1975); Orlando v. General Elec. Credit Corp., 430 So.2d 750 (La.App. 5 Cir.1983).
The plaintiff's counsel argues that the plaintiff's profile is not that of someone who is faking injuries. Without going into unnecessary detail, it is clear from the record that if we assume that the plaintiff was injured in the manner which he claims to be, then one could say that he has minimized the extent of his injuries. This Court is aware that reasonable fact-finders could have found in the plaintiff's favor had they had more confidence in his credibility and the credibility of his witnesses.
While the trial court remains the initial forum for the resolution of factual and legal issues, the Louisiana Constitution specifically extends the jurisdiction of an appellate court in civil cases to include the review of facts as well as law. La. Const. Art. V, Sec. 10B (1974); Gonzales v. Xerox Corp., supra. It is well settled that an appellate court may render a judgment on the merits when the trial court has made a consequential, erroneous ruling regarding the exclusion or admission of evidence. Id., Orlando v. General Elec. Credit Corp., supra.
Even if we were to assume the error was not harmless, a review of the complete record, including the proffer in accordance with La. C.C.P. art. 1636, demonstrates to us that although the plaintiff had injuries, those injuries may not have occurred in the subject accident.
It is clear that the plaintiff failed to disclose to investigating officers either that he was in the vehicle when the accident occurred or that he was in any way injured. Further, the purported corroboration of his being in the vehicle at the moment of the collision by the testimony of his brothers, George and Geron, only was volunteered long after the accident while this case was in litigation. And it is a relevant question of concern when a party on the day of an accident visits an attorney first and immediately thereafter proceeds to a physician for a medical examination. Such is especially relevant in this case because the physician's contemporaneous notes of the initial visit validate the defendant's contention that the plaintiff was not in the vehicle at the moment. The physician's notes from 27 February 1997 document only complaints of shoulder pain and omit reference to complaints of knee injury. Only much later do complaints of knee injury appear. When conservative treatment of the shoulder failed to alleviate the plaintiff's pain, Daniel Seltzer, M.D., an orthopedic surgeon performed arthroscopic surgery of the shoulder by which he trimmed and repaired four areas of damaged tissue, bone and cartilage. Dr. Seltzer expressed the opinion that some of the damage was degenerative and that the joint had sustained trauma, which was possibly consistent with an incident such as that now described by the plaintiff.
Under the totality of the evidence, we do not conclude that the plaintiff sustained any injury in the accident for he has failed to prove by a preponderance of evidence that he was in the van at the moment of the collision. The jury's verdict is in accord.
*607 We have considered whether it is appropriate for us to remand this matter for a new trial because credibility is an issue in this case. We conclude that a remand is inappropriate because the record before us is complete. Since the plaintiff was permitted by the court to proffer Lieutenant Lee's testimony on the plaintiffs reputation in the community and in fact did so, this Court, in accordance with its constitutional authority to review the law and facts, must render.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
BYRNES, J., dissents with reasons.
McKAY, J., dissents.
BYRNES, J., dissenting with reasons.
The majority opinion does an excellent job of setting forth the facts of this case in a thorough and fair manner. I disagree only with the conclusion drawn by the majority from those facts.
Where the question of whether the plaintiff was in the vehicle is such a close one, I cannot agree that "the exclusion of the reputation evidence was a technical error... but the error was harmless..." Based on the record before us, a reasonable fact finder could have found in favor of the plaintiff. More positive character evidence in favor of plaintiff could easily have tipped the scales by making such a reasonable finding seem all the more reasonable. Where an error might change the result it is not harmless. I would remand the case to allow the plaintiff to attempt to lay the proper foundation for admissible character testimony from Lieutenant Lee.
McKAY, J., dissenting.
I respectfully dissent for the reasons assigned by Chief Judge Byrnes.
NOTES
[1] Ms. Lucas was insured by Allstate Insurance Company.
[2] The defendants have offered no objection to plaintiff's proffer other than the failure to establish a proper foundation pursuant to La. C.E. art. 608A(2) and the contention that the proffered testimony was based on personal opinion and not general reputation.
[3] Hasney apparently carried a letter from his lawyer dated the same date as the incident when he went to be examined by Dr. Olson.