h SULLIVAN, Judge.
Mary Touchard sued Ted Breaux, State Farm Mutual Automobile Insurance Company, his liability insurer, and Southwest Louisiana Electric Membership Corporation (Slemco), his employer, for damages she sustained in a rear-end collision that occurred on April 1, 1996. Slemco was dismissed as a defendant prior to trial. After a trial on the merits, the trial court ruled that there were no injuries to Ms. Touchard caused by the fault of Mr. Breaux. Ms. Touchard appeals the trial court’s judgment dismissing her claims against Mr. Breaux. For the following reasons, we affirm in part, reverse in part, and render.
| ¡.FACTS
On April 1, 1996, Ms. Touchard drove her friend, Lucille Bellard, to Carenero, Louisiana, to pay her Slemco electric bill. As Ms. Touchard was exiting the Slemco parking lot, her car was hit from behind by a pickup truck driven by Mr. Breaux. Mr. Breaux^ a Slemco employee, was on his way home for lunch at the time of the accident.
The facts of exactly how the accident occurred are in dispute. Slemco is situated on the service road adjacent to Interstate Highway 49 North in Carenero, Louisiana. Ms. Touchard and Ms. Bellard testified that the accident occurred when Ms. Touchard was stopped at a stop sign posted on a driveway exiting the Slemco parking lot onto the service road. They both testified that Ms. Touchard’s car was pushed into the service road adjacent to the parking lot.
Mr. Breaux admitted that he was at fault in the accident; however, he did not believe he was totally at fault. He testified that he saw Ms. Touchard’s car stopped at the stop sign and that he stopped behind her. According to Mr. Breaux, Ms. Touchard started forward, “like she was taking off in a normal fashion.” He looked to the left to make sure the road was clear of traffic and took his foot off of the brake; he did not put his foot on the accelerator. Mr. Breaux testified that when he turned his head forward again, Ms. Touchard was right in front of him. He described the impact as a slight touch. Mr. Breaux denied that he pushed Ms. Touchard’s car into the service road, testifying that Ms. Touchard’s vehicle was already on the road when he hit her. At trial, Mr. Breaux testified that the day after the accident he thought that the accident may have happened because Ms. Touchard’s car, which had a manual transmission, was rolling backwards down the sloped driveway. On crossjexamination,3 Mr. Breaux agreed that the accident would not have happened if he would have remained stopped until Ms. Touchard exited the driveway.
Deputy Brett Pryor of the Carenero City Police Department investigated the accident. He questioned Ms. Touchard and Mr. Breaux about how the accident occurred. Mr. Breaux told Deputy Pryor that the accident happened when Ms. *1235 Touchard was about to take off from the stop sign; she hesitated and stopped again; he anticipated her moving out of the area and proceeded forward striking her vehicle from the rear. Ms. Touchard testified that the accident occurred when she was at the stop sign and was hit from behind.
Prior to the April 1, 1996 accident, Ms. Touchard had been involved in five automobile accidents. She had received extensive medical treatment as a result of injuries received in those accidents, including psychiatric counseling, three back surgeries, treatment for a temporomandibular joint (TMJ) injury, and treatment for chronic lower back pain. Following the accident, Ms. Touchard sought treatment from Dr. David Dawes, a psychiatrist, and Dr. Ronald Segar, a family practitioner.
Dr. Dawes had been treating Ms. Touch-ard since 1993. He testified that she had some mental conditions that pre-existed the April 1, 1996 accident. In fact, as of December 19, 1995, Dr. Dawes was of the opinion that Ms. Touchard would need psychiatric care indefinitely. Even so, he was emphatic in his opinion that the April 1, 1996 accident aggravated Ms. Touchard’s pre-existing post-trauma stress and depression. Ms. Touchard had seen Dr. Dawes on March 20, 1996, for an office visit. Before the accident, she had office visits with Dr. Dawes once every three months. Her visits increased to one visit every two months after the accident. Dr. Dawes testified that Ms. Touchard’s post-traumatic stress was aggravated in that she had Dmore nightmares, intrusive thoughts, and hyper-vigilance. He described her as being more distraught, more preoccupied, and more consistently tearful following the April 1,1996 accident. Dr. Dawes explained that Ms. Touchard experienced a recurrence of major depression after the accident which, in his opinion, was triggered by the April 1, 1996 accident. Dr. Dawes’ was questioned at length on cross-examination regarding his opinion that Ms. Touchard’s pre-existing, post-traumatic stress and depression were exacerbated by the accident. He never wavered in his opinion, testifying that “this accident made her worse off than she would have been if the accident never occurred.”
Ms. Touchard testified that immediately after the accident, she had a headache and tingling pain in her left hand. She also testified that there was a small cut on her left arm. Ms. Bellard confirmed that Ms. Touchard complained of a headache before they left the scene of the accident.
Ms. Touchard had her first appointment with Dr. Segar on April 4, 1996. She had not been treated by Dr. Segar before the April 1,1996 accident. Ms. Touchard complained to Dr. Segar of pain on the left side of her head immediately after the accident. She related that later she had neck pain, pain radiating down her trapezi-us muscles going into her shoulders, arm pain, soreness in the chest area, lower back pain, and a headache. Dr. Segar testified that the only visible evidence of trauma to Ms. Touchard was the cut on her left arm. Ms. Touchard made Dr. Segar aware of her prior medical treatment, including the three back surgeries, the TMJ injury, and chronic low back pain. She complained to Dr. Segar that these prior conditions were aggravated by the accident. Dr. Segar treated Ms. Touchard with physical therapy, muscle relaxers, and pain relievers. He was of the opinion that Ms. Touchard had|sreached maximum medical improvement as of November 22, 1996, and he discharged her from his care at that time. In his opinion, her preexisting conditions of lower back pain, TMJ, and headaches were aggravated by the accident. At the time that he discharged her, Dr. Segar testified that Ms. Touchard felt that the pain, in these areas were approximately at the level they were before the accident. In Dr. Segar’s opinion, Ms. Touchard’s neck and trapezius pain did not predate the accident and were improved, but not completely alleviated, at the time of her discharge. His final diag *1236 nosis was multiple myofascial strain of the cervical and trapezius areas and mid-back with aggravation of prior TMJ headaches and lower back. He testified that her complaints were consistent with the type of injury expected to result from a rear-end collision and that her complaints following the accident were more probably than not caused by the accident. Ms. Touchard testified that her injuries from the accident lasted about ten months.
Samuel Trahan, property claims re-inspector for State Farm, inspected Ms. Touchard’s vehicle for damage more than one month after the accident. In his opinion, the accident did not cause any damage to Ms. Touchard’s thirteen-year-old Toyota Corolla. On inspection, he found a broken tail-light but opined that it did not result from the April 1, 1996 accident because there was a buildup of mildew and slime inside the light. Ms. Touchard complained of a problem with the gearshift on her car following the accident. Ms. Bellard and Mr. Breaux both testified to the grinding of the gears on the car immediately after the accident. Mr. Trahan testified that he found no problems with the gearshift when he manipulated the gears at the time of his inspection. Ms. Touchard did not present any evidence contradicting Mr. Trahan’s testimony.
| fiMs. Touchard appeals the trial court’s dismissal of her claim, arguing that the trial court committed error in concluding that Ms. Touchard did not suffer any damages because there was no property damage to her car and in failing to make an assessment of fault between the parties.
LAW AND DISCUSSION
The trial court determined that there was no damage to Ms. Touchard’s car and that there were no injuries to Ms. Touchard caused by the fault of Mr. Breaux. These determinations cannot be reversed unless we find that there is no reasonable factual basis for the finding and that the finding is clearly wrong. Stobart v. State, Through Dep’t of Transp. and Dev., 617 So.2d 880 (La.1993). Ms. Touchard bears the burden of proving a causal relationship between the accident and the injuries she claims were caused by the accident. Aucoin v. State Farm Mut. Auto. Ins. Co., 505 So.2d 993 (La.App. 3 Cir.1987). A defendant takes his victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct. Perniciaro v. Brinch, 384 So.2d 392 (La.1980). A plaintiff with a pre-existing condition is entitled to be compensated if a defendant’s negligent act caused an aggravation of the pre-existing condition. Id. However, a causal link between the negligent act and the degree of aggravation must be established. White v. State Farm Mut. Auto. Ins. Co., 97-1704 (La.App. 3 Cir. 4/29/98); 713 So.2d 618; unit denied, 98-1429 (La.7/2/98); 724 So.2d 741.
Ms. Touchard argues that even though the force of the impact between her car and Mr. Breaux’s truck may have been slight, it does not preclude an award of damages for physical and mental injuries. She is correct. However, in determining causation, it is proper for the fact finder to consider the minimal nature of the 17accident. Coleman v. U.S. Fire Ins. Co., 571 So.2d 213 (La.App. 3 Cir.1990); Fletcher v. Langley, 93-624 (La.App. 3 Cir. 2/2/94); 631 So.2d 693, writ denied, 94-521 (La.4/7/94); 635 So.2d 1139.
On the issues of causation and damages, Ms. Touchard presented her testimony and the testimony of Dr. Segar, Dr. Dawes, Ms. Bellard, and her friends, Arde-si Francois and Marie Simien. Ms. Bel-lard, Ms. Francois, and Ms. Simien all testified that following the accident Ms. Touchard was depressed or sad and complained of pain. Ms. Francois testified that Ms. Touchard became very withdrawn and often questioned “what else can happen to me?” Dr. Dawes testified that Ms. Touchard was distraught and preoccupied about the accident. She became upset and fearful when she heard tires screeching or *1237 would see another accident or near-accident. Dr. Dawes stressed throughout his testimony that even though Ms. Touchard had some significant problems before the April 1, 1996 accident, her post-traumatic stress and depression were aggravated by the accident. There was no expert testimony presented by Defendants disputing Dr. Dawes’ testimony.
Dr. Segar had not treated Ms. Touchard prior to this accident. Except for a small cut on Ms. Touchard’s arm, Dr. Segar’s testimony regarding causation of Ms. Touchard’s physical injuries, including an aggravation of pre-existing conditions, was based upon Ms. Touchard’s subjective complaints. Ms. Touchard did not know how her arm was cut in the accident. The trial court concluded that Ms. Touchard failed to prove that the accident caused her physical injuries. Under the facts of this case, we cannot say that he committed manifest error in this determination.
However, we conclude that the trial court erred in finding that this accident did not aggravate Ms. Touchard’s pre-existing mental condition. Recovery of damages | «for negligent infliction of mental distress is generally limited to cases with an accompanying physical injury. Moresi v. State, through Dep’t of Wildlife and Fisheries, 567 So.2d 1081 (La.1980). In More-si, the court pointed out that “there have been deviations from the general rule” and listed several cases where recovery was allowed without an accompanying physical injury. It noted that “[tjhere may be other eases, but all of these categories have in common the especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious.” Id. at 1096.
As related above, Ms. Touchard had been involved in five previous automobile accidents. She had undergone numerous surgeries, including three to her back. There is no indication that her pre-existing mental condition was not genuine. Finally, Dr. Dawes’ testimony that her mental problems were aggravated by this incident was uncontradicted. These “special circumstances” assure us that the claim is not spurious and that she has “serious mental distress” as a result of this accident.
APPORTIONMENT OF FAULT
Ms. Touchard argues that the trial court did not make an assessment of fault as required by La.Code Civ.P. arts.1917 and 1812(C), and that its failure to do so was error. The trial court determined that there were no injuries to Ms. Touch-ard that were caused by the fault of Mr. Breaux. We have determined that the trial court committed manifest error in reaching this conclusion, and we must address the issue of apportionment of fault.
It has been uniformly held that a following motorist in a rear-end collision is presumed to be negligent in causing the accident. Mart v. Hill, 505 So.2d 1120 (La.1987). The following motorist bears the burden of proving that he maintained a 19proper lookout in order to exculpate himself from a presumption of negligence. Sonnier v. Reed, 582 So.2d 344 (La.App. 3 Cir.1988). As noted previously, Mr. Breaux admitted that he took his eyes off of Ms. Touchard’s car to check the traffic on the service road because he anticipated her departure from the driveway. He indicated that when he turned his attention back to Ms. Touchard, she had stopped, and he ran into the rear of her car. If Mr. Breaux had maintained a proper lookout, the accident would not have happened. Accordingly, we find Mr. Breaux 100% at fault in causing the accident.
DAMAGES
We must determine an award for Ms. Touchard’s aggravation of her mental condition. Ms. Touchard testified that she recovered from the injuries she suffered in the accident within one year of the accident. Dr. Dawes quantified Ms. Touchard’s anxiety and stress as moderate before the accident but severe after *1238 the accident. He described her recurrent depression as major depression. He also believed that her pain disorder worsened after the accident.
Under these circumstances, we believe that an award of $10,000.00 is appropriate for the aggravation of Ms. Touchard’s mental condition. We have reviewed the record as to the dates of Ms. Touchard’s office visits with Dr. Dawes following the accident and award her the amount of $435.00 representing the cost of four additional visits necessitated by the accident.
The expert witness fee of Dr. Dawes is set at $500.00. All costs of this matter are assessed to Defendants.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
DOUCET, C.J., DISSENTS.'
THIBODEAUX, J., CONCURS WITH WRITTEN REASONS.
AMY, J., DISSENTS IN PART AND ASSIGNS REASONS.