824 So.2d 475 (2002)
Dorothy DUGAS
v.
Lawrence T. DEROUEN, J.P. Thibodeaux, Inc. and American Eagle Ins. Co.
No. 01-1397.
Court of Appeal of Louisiana, Third Circuit.
July 3, 2002.
*477 John E. McElligott, Jr., David A. Young, Davidson, Meaux, Sonnier & McElligott, Lafayette, LA, for Defendants/Appellants, Lawrence T. Derouen, J.P. Thibodeaux, Inc., American Eagle Ins. Co.
James Michael Stefanski, Edwards, Stefanski & Zaunbrecher, L.L.P., Crowley, LA, for Plaintiff/Appellee, Dorothy Dugas.
Court composed of JOHN D. SAUNDERS, JIMMIE C. PETERS, and MICHAEL G. SULLIVAN, Judges.
PETERS, J.
The plaintiff, Dorothy Dugas, brought this suit to recover damages for the personal injuries she sustained in an automobile accident wherein the vehicle she was driving was struck by a vehicle driven by Lawrence Derouen. In her suit, she named as defendants Mr. Derouen; J.P. Thibodeaux, Inc., Mr. Derouen's employer; and American Eagle Insurance Company, the liability insurance carrier of the vehicle driven by Mr. Derouen. Prior to trial, American Eagle Insurance Company became insolvent and Louisiana Insurance Guaranty Association (LIGA) replaced it as a party defendant. After a bench trial, the trial court signed a judgment setting Ms. Dugas' damages at $90,095.31 ($70,000.00 in general damages and $20,095.31 in past medical expenses), found that Mr. Derouen was fifty percent at fault in causing the accident, and assessed the other fifty percent of fault to two bicycle riders involved in the accident. The trial court further ordered that $10,000.00 previously paid Ms. Dugas by her uninsured/underinsured motorist insurance carrier, Farm Bureau Insurance Company (Farm Bureau), be deducted from the general damage award before application of the percentages of fault assigned to Mr. Derouen and the bicycle riders, and that $2,000.00 previously paid Ms. Dugas by Farm Bureau under its medical payment portion of its insurance policy be deducted from the award for medical expenses before application of the percentages of fault assigned to Mr. Derouen and the bicycle riders. Mr. Derouen, J.P. Thibodeaux, Inc., and LIGA appealed, asserting three assignments of error, and Ms.Dugas answered the appeal, asserting two additional assignments of error.
The accident giving rise to this litigation occurred on May 29, 1996, at approximately 3:00 p.m. on Louisiana Highway 675 in Iberia Parish, Louisiana. As Ms. Dugas traveled along the highway, she encountered two children riding on a bicycle, weaving into her lane of traffic, and proceeding in the opposite direction of her vehicle. Fearful that the children would swerve into her path or fall from the bicycle into her lane of traffic, Ms. Dugas forcefully applied her brakes. Mr. Derouen's vehicle, which was directly behind Ms. Dugas' vehicle when she applied her brakes, struck the rear of her vehicle. J.P. Thibodeaux, Inc., Mr. Derouen's employer, owned the vehicle driven by Mr. Derouen, and Mr. Derouen was within the course and scope of his employment when the accident occurred.
In appealing the judgment rendered against them, Mr. Derouen, J.P. Thibodeaux, Inc., and LIGA assert the following assignments of error:
1. The trial court committed manifest error and/or erred in law when it apportioned fifty percent (50%) of the liability for the accident to [Mr. Derouen].
2. The trial court committed manifest error and/or error of law when it subtracted the uninsured motorist credit from the gross general damage award rather than subtracted the uninsured motorist credit from *478 the net general damage award apportioned to [them].
3. Considering the facts and circumstances surrounding this case, the trial court erred when it did not apply the sudden emergency doctrine to Mr. Derouen's actions.
In her answer to the appeal, Ms. Dugas asserted the following assignments of error:
1. The trial court committed reversible error when it assessed 50% of the fault to children on a bicycle who were traveling from school and who were seen by [Mr.] Derouen, in lieu of assessing 100% of fault to [Mr.] Derouen, who rear-ended [Ms.] Dugas, who braked for the children to avoid an accident.
2. The trial court committed manifest error when it awarded only $70,000.00 for pain and suffering, and nothing for lost wages or future medical treatment.

OPINION

Issue of Fault
Because the defendants' first and third assignments of error and Ms. Dugas' first assignment of error all address the issue of fault, we will consider them together. The trial court rendered written reasons for judgment in reaching its decision on liability and fault. In doing so, it stated the following:
Testimony presented at trial established the following. On May 29, 1996 Dorothy Dugas was traveling on La. 675 in New Iberia. Immediately following her was defendant Lawrence Derouen. Dugas observed two boys on bikes riding on the right shoulder of the road; she saw them swerve and was afraid they were going to come onto the road. She slammed on her brakes. Derouen immediately applied his brakes but the road was wet and he couldn't control his car; he slid into the back of Dugas' vehicle. Billy Williams, an eyewitness to the accident[,] stated that he observed the two boys riding one bikeone boy was pedaling while the other was a passenger. Williams noted that they were riding against traffic and going on and off the pavement. He also observed both cars applying their brakes and both cars sliding.
Louisiana law prohibits a bicycle rider from riding against traffic on the shoulder of the road and prohibits more than one person on a bicycle at a time. R.S. 32:195 and 32:197. The bicycle riders were in clear violation of these statutes. They were riding against traffic and riding two persons on a one passenger bike. The following motorist, Lawrence Derouen, has the burden of proving that he was not at fault. No clear testimony was given regarding how far behind Dugas' vehicle he was traveling. The testimony did not establish how far the cars slid before they stopped and whether, if Derouen had not been following closely, he would have been able to avoid the collision despite the wet road.
After reaching these factual conclusions, the trial court assessed the fault in causing the accident equally between the bicycle riders and Mr. Derouen. Both sides dispute this assessment of fault.
In order to determine whether liability exists, a duty-risk analysis is used. Syrie v. Schilhab, 96-1027 (La.5/20/97), 693 So.2d 1173. Under this analysis, the plaintiff must prove that the conduct in question was a cause-in-fact of the resulting harm, the defendant owed a duty of care to the plaintiff, the defendant breached the duty, and the risk of harm was within the scope of protection afforded by *479 the duty breached. Id. In comparing the fault of the parties,
various factors may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought.
Watson v. State Farm Fire & Cas. Ins. Co., 469 So.2d 967, 974 (La.1985). The trial court's factual findings are subject to review under the manifest error analysis. Stobart v. State, Dep't of Transp. & Dev., 617 So.2d 880 (La.1993). Additionally, a trial court's allocation of fault is a finding of fact and is subject to the manifest error standard of review. Adkinson v. Brookshire Grocery Co., Inc., 95-1021 (La.App. 3 Cir. 1/31/96), 670 So.2d 453, writ denied, 96-0514 (La.4/8/96), 671 So.2d 339.
Concerning Mr. Derouen, La.R.S. 32:81(A) provides that "[t]he driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway." State Trooper Michael Labiche investigated the accident. Based on his investigation, he concluded that neither vehicle involved had mechanical problems that might have contributed to the accident, and that, based on the location of the debris, the damage to the vehicles, and the final resting place of each vehicle, Mr. Derouen had simply failed to control his vehicle. He issued Mr. Derouen a citation, and Mr. Derouen ultimately pled guilty to the offense of careless operation of a vehicle, a violation of La. R.S. 32:58.
We note that "[i]t has been uniformly held that a following motorist in a rear-end collision is presumed to be negligent in causing the accident," and that, to overcome the presumption of negligence, "[t]he following motorist bears the burden of proving that he maintained a proper lookout in order to exculpate himself from a presumption of negligence." Touchard v. Slemco Elec. Found., 99-539, p. 8 (La. App. 3 Cir. 11/17/99), 745 So.2d 1232, 1237, rev'd on other grounds, 99-3577 (La.10/17/00), 769 So.2d 1200. Mr. Derouen attempts to negate liability by asserting that the collision was the fatal link in a chain of events over which he had no control. Specifically, he argues that he was subject to a sudden emergency that excused his actions.
Mr. Derouen argues that when Ms. Dugas saw the two children on the bicycle, she panicked and slammed on her brakes. When she did, he reactively hit his brakes and unavoidably collided into her because of the wet conditions. The trial court rejected this argument, implicitly concluding that Mr. Derouen failed in his burden of proof by not presenting sufficient evidence to establish that he was not following too closely.
We find no manifest error in the trial court's factual determinations. Additionally, we note that Ms. Dugas had a special duty to use extreme care when she observed the children in the highway since children often act in sudden and unpredictable ways. Jones v. Hawkins, 29,914 (La. App. 2 Cir. 1/21/98), 708 So.2d 749, rev'd in part on other grounds, 98-1259 (La.3/19/99), 731 So.2d 216; Scardina v. State Farm Mut. Auto. Ins. Co., 597 So.2d 1148 (La.App. 1 Cir.), writ denied, 604 So.2d 1004 (La.1992). The same duty applied to Mr. Derouen when he became aware of the children's presence. Furthermore, Mr. Derouen had the additional *480 duty of leaving enough distance between his vehicle and that of Ms. Dugas to allow for safety in such situations, taking into consideration the speed of the vehicles, the nature of the traffic, and the condition of the highway at the time. La.R.S. 32:81(A). We do not find that the sudden emergency doctrine can be used to absolve a driver of the duty to follow another vehicle in a reasonable and prudent manner. Therefore, we find that the trial court did not err in assigning a portion of the fault in causing the accident to Mr. Derouen.
Ms. Dugas argues in her assignment of error that the trial court erred in assigning any of the fault in causing the accident to the bicycle riders and in not assigning one hundred percent of the fault in causing the accident to Mr. Derouen. We disagree. In its reasons for judgment, the trial court based its assignment of fault to the bicycle riders on La.R.S. 32:195 and 32:197. Louisiana Revised Statutes 32:195(B) prohibits a person from transporting a passenger on his bicycle unless the bicycle is designed and equipped for passengers. Louisiana Revised Statutes 32:197(A) provides that "[e]very person operating a bicycle upon a roadway shall ride as near to the right side of the roadway as practicable, exercising due care when passing a standing vehicle or one proceeding in the same direction." While the trial court did not mention La. R.S. 32:194 in its reasons for judgment, we note that the statute provides:
Every person riding a bicycle upon a highway of this state shall be granted all the rights and shall be subject to all the duties applicable to the driver of a vehicle by this Chapter, except as to special regulations in this Part and except as to those provisions of this Chapter which by their very nature can have no application.
(Emphasis added.)
Thus, unless made impossible by the very nature of the bicycle, the operator of a bicycle owes all of the duties owed by drivers of motor vehicle as established by Title 32 of the Revised Statutes.
By operating the bicycle against traffic with two people on a bicycle designed and equipped for only one person and by swerving into the traveling lane of traffic, the bicycle riders clearly violated duties owed to the motoring public in general and to Ms. Dugas in particular. Therefore, we find that the trial court did not err in assigning a portion of the fault in causing the accident to the bicycle riders.
Applying the Watson factors to the facts of the accident herein, we find no manifest error in the trial court's apportionment of fault. Therefore, we reject the defendants' first and third assignments of error, and Ms. Dugas' first assignment of error, finding no merit in any of them.

Uninsured Motorist Credit Issue
In their second assignment of error, the defendants assert that the trial court erred in subtracting the $10,000.00 paid by Farm Bureau under its UM coverage from the general damage award before applying the apportionment of fault. Instead, they argue that the award should be reduced by the degree of fault assigned to Mr. Derouen and then the $10,000.00 should be deducted. In other words, the defendants argue that they should be liable for $25,000.00 in damages [($70,000.00/2) - $10,000.00] instead of $30,000.00 in damages [($70,000.00 - $10,000.00)/2]. This issue arises because of the insolvency of American Eagle Insurance Company and the entry of LIGA into the proceedings.
This issue is governed by La.R.S. 22:1386, which provides, in pertinent part, that "any amount payable by such other insurance shall act as a credit against the damages of the claimant, and the association *481 shall not be liable for such portion of the damages of the claimant." La.R.S. 22:1386(A) (emphasis added). In its reasons for judgment, the trial court explained the application of the credit to the gross damages, stating that the statute specified damages of the claimant rather than net damages of the defendant. We agree with the trial court's application and reasoning. This court, in Knowles v. Barnes, 95-1536 (La.App. 3 Cir. 4/3/96), 671 So.2d 1123, held that payments made by other insurers, which includes uninsured motorist insurers, are to be applied, or credited, to the total damages of the claimant before LIGA's liability could be calculated. To apply the credit to the net damages of the defendant would result in a reduction to the plaintiff's recovery. The statute clearly specifies damages of the claimant. As such, we affirm the application of the credit by the trial judge. The defendants' assignment of error regarding the LIGA credit is without merit.

Damages Issue

General Damages
In Ms. Dugas' second assignment of error, she alleges that the trial court committed manifest error when it awarded only $70,000.00 for pain and suffering, and nothing for lost wages or future medical. Upon review of the general damages awarded, we must consider the guidelines established by the supreme court.
In Duncan v. Kansas City Southern Railway Co., 00-0066, p. 13 (La.10/30/00), 773 So.2d 670, 682, the Louisiana Supreme Court provided the following guidelines:
General damages are those which may not be fixed with pecuniary exactitude; instead, they "involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or lifestyle which cannot be definitely measured in monetary terms." Vast discretion is accorded the trier of fact in fixing general damage awards. This vast discretion is such that an appellate court should rarely disturb an award for general damages. Thus, the role of the appellate court in reviewing damage awards is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact.
(Citations omitted.)
"Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award." Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La. 1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). However, the supreme court in Youn explicitly stated that it is proper to first determine whether the trial court abused its discretion in its award of general damages before comparing the trial court's award to previous general damages awards to determine whether the award falls within the range "reasonably within [the trial court's] discretion." Id. at 1260. "[T]he role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact." Id.
In this case, Ms. Dugas was transported by her son from the accident scene to Dauterive Hospital in New Iberia, Louisiana, where she complained to the emergency room physician of head and shoulder blade pain. She was treated and released, *482 but returned to the hospital emergency room the next day complaining of a "stiff neck" with "tingling numbness," and of "shoulder pain." X-rays taken that day revealed "evidence of disc space degeneration at C6-7 plus facet joint degeneration changes and joints of Luschka degenerative changes" as well as a "[f]racture of the left ninth rib." She was again released to return home.
Thereafter, Ms. Dugas underwent extensive evaluation and treatment by numerous physicians. She first sought treatment from Dr. Richard Saloom, a Lafayette, Louisiana general practitioner, who followed her professionally through July 16, 1996. Dr. Saloom diagnosed Ms. Dugas' medical difficulties as "rib fracture, cervical and lumbar strain." Unable to achieve a satisfactory resolution of Ms. Dugas' pain complaints through his treatment, Dr. Saloom referred Ms. Dugas to Dr. Louis Blanda, Jr., a Lafayette, Louisiana orthopedic surgeon.
Dr. Blanda began treating Ms. Dugas on July 9, 1996, and continued to follow her on a sporadic basis through October 1, 1998. Dr. Blanda's initial diagnosis was that of muscle sprain or strain, and ultimately concluded that her physical problems were caused by a "pre-existing defect that was aggravated by the trauma" of the accident. Dr. Blanda concluded at his last examination of Ms. Dugas that her pre-existing disc at the L4-5 level had become larger as a result of the accident, and predicted that she would have "flareups" in the future. However, Dr. Blanda suggested continued conservative treatment and did not recommend surgical intervention. Future surgery was only a possibility. However, he recommended that she "stay with light or sedentary physical activity and the same with work activity."
During his treatment of Ms. Dugas, Dr. Blanda referred her to Dr. Daniel Hodges, a physical medicine and rehabilitation physician, who first saw her on September 25, 1996. Dr. Hodges initially diagnosed Ms. Dugas as suffering from "cervical spondylosis with an acute exacerbation or compounded by spondylitic radiculitis primarily involving the C6-7 level, mechanical back pain, and bilateral occipital neuralgia with tension headaches." Subsequent scheduled appointments were not met by Ms. Dugas, and Dr. Hodges next saw her on April 8, 1997. According to Dr. Hodges, Ms. Dugas' condition had worsened. When she returned on April 15, 1997, he referred her to Dr. James Pearce, a Lafayette, Louisiana dentist, for a temporomandibular joint (TMJ) assessment. After seeing Ms. Dugas on April 29, 1997, Dr. Hodges also referred her back to Dr. Blanda for re-evaluation.
Dr. Pearce treated Ms. Dugas for a TMJ condition between May 5, 1997, and July of 1998. His treatment consisted of recommendation of a soft diet, application of moist heat, and education of her problem. During this period, Ms. Dugas had good periods and bad periods. At his last treatment of Ms. Dugas, he found her to be pain free. However, he expected that Ms. Dugas would have recurring periods of discomfort.
The other medical evidence presented did not add to Ms. Dugas' position. Essentially, when considering the medical evidence in a light most favorable to Ms. Dugas, she sustained a broken rib from which she has recovered, a cervical strain or sprain, aggravation of a pre-existing disc problem, and a TMJ condition. Her injuries have stabilized, and, subject to "flare-ups" in the future, they are basically resolved.
Ms. Dugas was 61 years old at the time of the accident. She testified that *483 she is still unable to do some of the things that she could do before the accident. While we may have awarded a different sum, we cannot say that the general damages awarded by the trial court constitutes an abuse of the trial court's discretion. Therefore, we find no merit in this assignment of error.

Future Medical Expenses and Lost Wages
"Future medical expenses by their nature are incapable of precise measurement. Thus, much discretion shall be left to the trial court for the reasonable assessment of those damages." Knabel v. Lewis, 00-1464, p. 4 (La.App. 1 Cir. 9/28/01), 809 So.2d 314, 317, writ denied, 01-2892 (La.3/8/02), 811 So.2d 886; La.Civ. Code art.1999. In Stiles v. K Mart Corp., 597 So.2d 1012, 1013 (La.1992), the supreme court addressed the issue of future medical expenses and stated:
When the record establishes that future medical expenses will be necessary and inevitable, the court should not reject an award of future medical expenses on the basis that the record does not provide the exact value of the necessary expenses, if the court can examine the record and determine from evidence of past medical expenses and other evidence a minimum amount that reasonable minds could not disagree will be required.
(Emphasis added.)
None of the doctors testified with any certainty that Ms. Dugas would incur any future medical treatment or expenses. Without their testimony to that effect, we cannot say that the record establishes that "future medical expenses will be necessary and inevitable." Therefore, we cannot say that the trial court abused its discretion when it declined to award Ms. Dugas any money for future medical expenses.
Concerning claims for lost wages, the plaintiff bears the burden of proof for claims for lost wages with reasonable certainty. Carrier v. Nobel Ins. Co., 01-0983 (La.App. 3 Cir. 2/6/02), 817 So.2d 126, writs denied, 02-0728, 02-0739 (La.5/10/02), 815 So.2d 843, 845; Thibodeaux v. Bernard, 00-72 (La.App. 3 Cir. 11/2/00), 772 So.2d 897. In determining a proper award for loss of future wages, the trial court must consider several factors: 1) the plaintiffs pre-injury physical condition, 2) the plaintiffs work history, 3) the consistency of the plaintiffs work, 4) the amount that the plaintiff would have earned had her injury not occurred, and 5) the probability that the plaintiff would have continued to earn wages over the remainder of her work life. LeBlanc v. Steptore, 98-808 (La.App. 3 Cir. 12/9/98), 723 So.2d 1056, writ denied, 99-0087 (La.3/12/99), 739 So.2d 772. The record is completely lacking in evidence to support an award to Ms. Dugas for lost wages. In fact, she was not even employed at the time of the accident at issue in this case. Because we find no evidence to make an award of lost wages, we find that the trial court did not abuse its discretion in declining to award Ms. Dugas any money for lost wages.
Considering the record before us, we find no merit in Ms. Dugas' second assignment of error.

DISPOSITION
For the foregoing reasons, we affirm the trial court's judgment in all respects. We tax one-half of the costs of appeal to Lawrence Derouen, J.P. Thibodeaux, Inc., and Louisiana Insurance Guaranty Association, and tax one-half of the costs of appeal to Dorothy Dugas.
AFFIRMED.
SAUNDERS, J., dissents and assigns written reasons.
*484 SAUNDERS, Judge, dissenting.
I respectfully dissent for the following reasons. The trial judge awarded damages to the Plaintiff and apportioned fault 50% to the bicycle riders and 50% to Derouen. Derouen breached his duty as a motorist in accordance with La.R.S. 32:81 which provides in pertinent part that "[t]he driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway."
The evidence indicates that he failed to maintain control of his vehicle, rear-ended Dugas, was issued two citations, and pled guilty to careless operation. Derouen was the legal cause of the accident. Derouen had a duty to leave enough space between his vehicle and the vehicle ahead of him to be able to come to a stop without hitting the preceding vehicle. The concept that a following driver is required to leave enough space between his car and the car ahead of him to be able to stop in the event that the leading driver stops suddenly is one of the basic principles first taught to students in driver's education. This defensive driving technique is so fundamental that it is considered a bedrock principle of driving safely. Clearly, if the following driver obeys the mandate of La. R.S. 32:81, there could be no emergency when the leading driver stops suddenly.
As for the bicycle riders, the majority concludes that they breached duties contained in La.R.S. 32:195 and 32:197 by riding with two persons on a one passenger bike and riding against traffic. Although I agree that they did breach their duty to the motoring public by riding against traffic and should be assigned some percentage of fault for this relatively benign breach, the bicycle riders should not be assigned any fault for violating La.R.S. 32:195. Louisiana Revised Statute 32:195(B) provides, "[n]o bicycle shall be used to carry more persons at one time than the number for which it is designed and equipped." The purpose of the law is to provide for the bicycle riders' safety, and it protects against the risk associated with the bicycle riders becoming injured by losing control of the bicycle. As such, Louisiana Revised Statute 32:195 is to keep riders from overloading a bicycle and, thus, endangering themselves. It is not to protect motorists, and its breach does not cause damages to motorists. Moreover, the breach of the duty did not contribute to the accident in the present case. Thus, the bicycle riders should only be apportioned a small percentage of fault for breaching La.R.S. 32:197, and they should not be apportioned any fault for breaching La.R.S. 32:195.
On the other hand, Derouen should be assigned a significantly greater degree of fault than the bicycle riders. There are three areas of disparity between the players which indicate that Derouen should receive a greater portion of the fault, and they are the following. First, the statute violated by Derouen imposes a far more serious duty than the law violated by the bicycle riders. Second, Derouen was driving a car while the boys were driving a bicycle. Third, Derouen was an adult, and the bicycle riders were minors. Under there circumstances, an apportionment of only 50% fault to Derouen seems completely unreasonable. I would apportion a far greater degree of fault to Derouen.
In regard to damages, the $70,000.00 awarded for damages is low and should be increased. The evidence reflects that Dugas was treated by Dr. Saloom shortly following the accident and that he treated her for injuries to her ribs, neck, and lower back. Further, the deposition testimony of Dr. Blanda indicates that he diagnosed and treated a spondylotic disc which *485 was causing her severe head, arm, and shoulder pain. Dr. Blanda also testified that her referred her to Dr. Rivet who testified that Dugas suffered from occipital neuralgia, cervical spondylosis, and a lumbar disc problem. Dr. Rivet recommended an anterior cervical discetomy if her complaints continued to persist. In addition, Dr. Blanda treated Dugas for a herniated disc at level L4-5, and he concluded that she should reduce her activities. The record also reflects that Dr. Hodges testified that his attempts to treat Dugas were unsuccessful and that he referred her back to Dr. Blanda for surgery. In addition, she was treated for TMJ. Upon reviewing the medical evidence and testimony and considering the severity of the injury, I feel that the general damages are unreasonably low and should be increased.